UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

METROPOLITAN PROPERTY AND           )
CASUALTY INSURANCE COMPANY,          )  **1 1 2 8 7 RGS**
Plaintiff,                           )
                                     )
v.                        **MAGISTRATE JUDGE** Alexander RECEIPT # _6 510 1_
                                     )       AMOUNT $ _.50_
HAI NHU HUYNH and                    )       SUMMONS ISSUED_YES_
SPINE CARE AND THERAPY, INC.,        )       LOCAL RULE 4.1 _____
Defendants.                          )       WAIVER FORM _____
                                             MCF ISSUED_____
                                             BY DPTY. CLK. _TDM_
                                             DATE _6|20|05_

## COMPLAINT

Metropolitan Property and Casualty Insurance Company ("Metropolitan") through its

counsel of record, McGovern & Ganem, P.C., allege as follows:

## PRELIMINARY STATEMENT

### NATURE OF THE CASE

1.   From January 2001 through the present, Spine Care and Therapy, Inc. ("Spine Care"), at

     the direction and control of its sole corporate officer and director, Hai Nhu Huynh, D.C.

     ("Dr. Huynh"), has systematically engaged in a fraudulent scheme designed to

     wrongfully obtain payments, through insurance benefits and other sources, from

     Metropolitan.

2.   The purpose of the Defendants' fraudulent scheme was to improperly obtain insurance

     benefits from Metropolitan for medical treatment allegedly provided to individuals who

     reportedly sustained injuries covered by Personal Injury Protection ("PIP") benefits, as

     prescribed by the Massachusetts "No-Fault" statute, M.G.L. c.90, §34M and the Standard

     Massachusetts Automobile Insurance Policy.

1

3.    The Defendants' fraudulent scheme was effectuated by the submission of wrongfully and

grossly inflated bills for medical treatment, and improperly exaggerated medical notes

and records for treatment, which in many instances were not provided to the patient.

## NATURE OF THE ACTION

4.    This action is brought pursuant to:

(a)    Massachusetts General Laws, Chapter 90, Section 34M;

(b)    Massachusetts General Laws, Chapter 93A, Sections 2 and 11; and,

(c)    Massachusetts Common Law.

## NATURE OF THE RELIEF SOUGHT

5.    As a result of the Defendants' fraudulent conduct set forth in this Complaint,

Metropolitan seeks compensatory damages arising from:

(a)    Payments made by Metropolitan to the Defendants based upon the Defendants'

fraudulent medical treatment bills, notes, and records;

(b)    All expenses and costs incurred by Metropolitan in obtaining: independent

medical examinations, peer record reviews, patient examinations under oath,

court reporters, interpreters, experts, outside vendors, and attorneys' fees

necessary to overcome the statutory presumption that medical records and bills

submitted by the Defendants were reasonable and necessary given Dr. Huynh's

professional license;

(c)    All insurance proceeds paid to first and third party bodily injury claimants,

either through settlement, arbitration, mediation and/or judgment, which were

in reliance upon the Defendants' fictitious treatment and fraudulent medical

records and billing entries; and,

2

(d) All legal expenses incurred by Metropolitan in responding to M.G.L. c.93A demands and M.G.L. c.176D settlement demands made by the Defendants and/or patients in an attempt to induce Metropolitan into making payments on the fraudulent treatment records and bills.

(e) Metropolitan's payments, expenses and costs, are of an amount in excess of Eight Hundred Thousand Dollars ($800,000.00), the exact amount to be determined at trial.

6. Pursuant to M.G.L. c.93A, §11, Metropolitan seeks treble the damages it has sustained as a result of the Defendants' unfair and deceptive trade practices, by which:

(a) the Defendants fraudulently obtained and/or attempted to obtain unwarranted payments from Metropolitan through an assignment of benefits for medical services allegedly provided to patients seeking PIP benefits under a Metropolitan motor vehicle insurance policy contract and the No-Fault statute;

(b) Metropolitan was caused to make payments to other insurance carriers and to third party bodily injury claimants as described herein; and,

(c) Metropolitan was caused to incur expenses and expend resources in order to investigate and defend unwarranted PIP and bodily injury claims.

7. Based on the perpetual nature of the Defendants' fraudulent scheme, Metropolitan seeks a permanent injunction pursuant to M.G.L. c.93A, §11 enjoining and restraining the Defendants:

(a) From providing chiropractic or physical therapy goods or services to any person seeking insurance benefits from Metropolitan pursuant to M.G.L. c.90, §34M;

3

(b) From submitting to Metropolitan any bills seeking payment for chiropractic or physical therapy services provided to any person seeking insurance benefits from Metropolitan; and,

(c) From submitting to Metropolitan any chiropractic or physical therapy records or bills to support or otherwise establish the reasonable and necessary nature of the medical expenses incurred by a patient making a claim for PIP or bodily injury benefits under any Metropolitan motor vehicle insurance policy.

8. In order to prohibit the Defendants from circumventing the permanent injunction sought in Paragraph 7, Metropolitan also requests that said injunction shall apply to any clinic, facility, or entity involved in the health care industry which employs Dr. Huynh, or that Dr. Huynh maintains an ownership interest, controls, serves as corporate officer, or is employed by, as well as any future health care entities or businesses in which Dr. Huynh is employed or that he or his agent obtains a pecuniary or controlling interest.

## PARTIES

9. The Plaintiff, Metropolitan, is a corporation incorporated under the laws of the State of Rhode Island, having its principal place of business at 700 Quaker Lane, Warwick, Rhode Island. At all times material hereto, Metropolitan has been licensed to and has been conducting business as an insurance carrier within the Commonwealth of Massachusetts.

10. The Defendant, Dr. Huynh, upon information and belief, is a citizen of the Commonwealth of Massachusetts, residing at 81 Hardwick Road, Ashland, Massachusetts. At all times material hereto, Dr. Huynh was and continues to be a licensed chiropractor in the Commonwealth of Massachusetts.

4

11.    The Defendant, Spine Care, upon information and belief, is a corporation incorporated

under the laws of the Commonwealth of Massachusetts, having its principal place of

business at 413 Neponset Avenue, Dorchester, Massachusetts. Dr. Huynh is sole

corporate officer and director, serving as Spine Care's President, Secretary, Treasurer,

and Registered Agent.

## JURISDICTION AND VENUE

12.    Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C.

§1332. Metropolitan is a corporation incorporated under the laws of the State of Rhode

Island having its principal place of business in the State of Rhode Island. Spine Care and

Therapy, Inc. is a corporation incorporated under the laws of the Commonwealth of

Massachusetts having its principal place of business in the Commonwealth of

Massachusetts and Hai Nhu Huynh, D.C. is a citizen of the Commonwealth of

Massachusetts. The matter in controversy, exclusive of interest and costs, exceeds

$75,000.00, as specified in 28 U.S.C. §1332.

13.    Venue is appropriate under 28 U.S.C. §1391, as all Defendants reside in this judicial

district, and the events or omissions giving rise to the claims occurred, in part, in this

judicial district.

## STATEMENT OF THE FACTS

### STATUTORY FRAMEWORK FOR MASSACHUSETTS
### PERSONAL INJURY CLAIMS

14.    Metropolitan underwrites motor vehicle insurance in the Commonwealth of

Massachusetts. Under Massachusetts law, the Standard Massachusetts Automobile

Insurance Policy, which is used by Metropolitan, as mandated by the Commonwealth of

Massachusetts, provides compulsory PIP benefits for any person injured while occupying

5

a motor vehicle covered under the insurance policy, regardless of who is ultimately at
fault for the motor vehicle accident.

15.   Under the compulsory PIP provision, Metropolitan is required to pay benefits for: (1)
      medical expenses incurred by the claimant; (2) lost wages; and, (3) replacement services.

16.   Pursuant to the Massachusetts No-Fault statute, M.G.L. c.90, §34M, Metropolitan must
      pay PIP benefits "upon receipt of reasonable proof of the fact and amount of expenses
      and loss incurred by a claimant." These payments must be commenced within ten (10)
      days, or Metropolitan must provide a written explanation of its intent not to pay, as well
      as the basis for non-payment.

17.   If due and payable benefits remain unpaid for thirty (30) days, any unpaid person or
      entity becomes a party to a statutory contract with Metropolitan, and may bring a contract
      action against Metropolitan for the unpaid benefits.

18.   As an insurance carrier, Metropolitan is required, pursuant to M.G.L. c.176D, to adopt
      and implement reasonable standards for the prompt investigation of claims arising under
      its insurance policies.

19.   In order to process these PIP claims in a prompt and fair manner, Metropolitan relies on
      the assertions of the medical providers submitting treatment records and bills in support
      of these claims, that the treatments were provided and the expenses incurred are
      necessary and reasonable.

20.   Chiropractic treatments and the bills associated with those treatments are presumed
      necessary and reasonable under M.G.L. c.233, §79G, when subscribed to by the licensed
      chiropractor who provided the treatments.

6

21.    Pursuant to M.G.L. c.231, §6D, a person allegedly injured in a motor vehicle accident
       may not seek damages for pain and suffering in a bodily injury tort action, unless the
       person's medical expenses have surpassed the statutory threshold of $2,000.00.

22.    Pursuant to the Massachusetts unfair trade practice statute, M.G.L. c.93A, as well as
       M.G.L. c.176D, Metropolitan may be subjected to treble damages for knowing or willful
       failures to effectuate prompt, fair, and equitable settlements of both PIP and bodily injury
       claims for which liability has become reasonably clear.

23.    Additionally, the No-Fault statute mandates that if it is determined that Metropolitan's
       insured is ultimately liable for damages resulting from a motor vehicle accident, then any
       other insurance carrier who tendered PIP benefits as a result of that accident is entitled to
       subrogation against Metropolitan to the extent of the PIP payments made, as well as
       reasonable expenses incurred by the other carrier in making the original PIP payments.

24.    The Defendants have developed a scheme to exploit this statutory framework by utilizing
       the "necessary and reasonable treatment" presumption to wrongfully induce Metropolitan
       to pay or settle false and possibly inflated claims, or else face the potential of greater
       liability and financial exposure under the various statutory provisions.

### THE SCHEME

#### Preparation

25.    Prior to receiving any treatment, every prospective Spine Care patient is required to sign
       an Assignment of Proceeds, Lien, and Authorization Form thereby providing the
       Defendants the ability to demand payment directly from the insurance carrier under any
       available PIP coverage.

26. Through the Assignment of Proceeds and the No-Fault statute, the Defendants now have a contract action against the insurance carrier, should the carrier fail to pay the Defendants' bills.

27. The Assignment of Proceeds, Lien, and Authorization signed by the patients is written in English.

28. Upon information and belief, most of the Defendants' patients do not speak, read, or write English.

29. Several of the Defendants' patients, upon information and belief, seek treatment at Spine Care because they only speak Vietnamese, and Spine Care has Vietnamese-speaking staff.

30. Several of the patients who seek treatment at Spine Care do not have legal representation at the time they complete the necessary paperwork and begin treating with the Defendants.

31. Through relationships with several local attorneys, Dr. Huynh and/or the Spine Care staff provide the names and phone numbers of these attorneys to the patients. In some instances, the attorney's business card is provided to the patient.

32. Dr. Huynh has personally arranged meetings between himself, a patient, and a local attorney, held in the Spine Care waiting room.

33. Massachusetts General Law, Chapter 221, §44A prohibits a health care provider or facility from communicating with an attorney for the purposes of enabling that attorney to solicit employment from the patient, or otherwise attempt to negotiate a settlement of a personal injury claim.

8

34. Dr. Huynh has notified and discussed with his patients the need for each patient to receive more than $2,000.00 in medical treatment in order to make an insurance claim.

35. Once all of the paperwork necessary to facilitate the Defendants' fraudulent scheme is signed by the patient, Dr. Huynh conducts an initial physical examination.

36. During the initial examination, Dr. Huynh makes false and/or exaggerated objective examination findings, thereby allowing him to diagnose extensive soft-tissue injuries, almost always consisting of primarily muscle sprains/strains. Dr. Huynh's findings are often wholly inconsistent with the patient's subjective complaints and indications of which body part is injured.

37. These false initial examinations and diagnoses allow the Defendants to implement a much more extensive and expensive chiropractic and physical therapy treatment program than what treatment, if any, is medically reasonable and necessary.

38. Based on these false and/or exaggerated initial examinations, each and every patient is found to be totally and/or partially disabled for a specific amount of time.

39. Additionally, numerous patients receive Excuse From Work forms provided by the Defendants, which are based on the false diagnoses and initial exams. These forms are used by the patients to avoid work for several days and seek additional payments from Metropolitan under the lost wages portion of the PIP coverage section.

40. The Defendants even provide their unemployed patients with Excuse From Work forms.

## The Treatment Program

41. Based on Dr. Huynh's false and/or exaggerated soft-tissue injury diagnosis, each patient is prescribed a comprehensive treatment program, frequently lasting more than ten weeks in duration.

9

42.   For patients who continue treatment for the duration of the program, each patient
      typically attends between 22 and 30 treatment visits.

43.   Although the Defendants' records indicate that each patient's treatment program consists
      of three treatment visits per week, to be reduced as the patient progresses, patients are not
      required to have an appointment for each visit, and may simply arrive for treatment at any
      time. This results in an unstructured and sporadic treatment program for numerous
      patients, and also calls into question whether the treatment is actually being rendered.

44.   Many patients have extensive and unexplained gaps in their treatment programs, often in
      excess of two weeks, yet the Defendants continue to administer the fraudulent treatment
      plan, with no adjustment due to the increased duration of the treatment program, the
      natural healing process which occurs over time, or the updated subjective complaints of
      the patient.

45.   According to Dr. Huynh's own statement, when a patient arrives for treatment, an
      unlicensed staff member provides the patient with a variety of supportive modalities. The
      staff member does not inquire about the patient's subjective complaints prior to
      administering the treatment.

46.   Further, Dr. Huynh has stated that only after the supportive modalities have been
      administered, does he examine the patient, entertain the patient's subjective complaints,
      and administer any further chiropractic treatment that he believes is warranted.

47.   Several patients have refuted Dr. Huynh's version of Spine Care's treatment practices.
      Regardless of whether the staff member inquires about the patient's subjective
      complaints prior to administering treatment, it is these same unlicensed administrative
      assistants that provide the majority of the treatment rendered at Spine Care.

48. Patients are billed for a variety of chiropractic and physical therapy treatments, the most prevalent being hot/cold packs, intersegmental (mechanical) traction, interferential treatment (electrical stimulation), whirlpool, infrared therapy, massage therapy, and chiropractic manipulations.

49. The following chart depicts the pertinent CPT codes, as defined by the American Medical Association, requiring direct contact between the licensed provider and the patient:

| CPT CODES REQUIRING DIRECT CONTACT | |
|---|---|
| 97124 | Massage Therapy |
| 97140 | Manual Therapy Techniques |
| 98940-98943 | Chiropractic Manipulations |

50. The following chart depicts the pertinent CPT codes, as defined by 233 CMR 4.02, which require that a licensed chiropractor or physical therapist be on the premises whenever these supportive modalities are administered:

| SUPPORTIVE MODALITIES | |
|---|---|
| 97010 | Hot/Cold Pack Treatment |
| 97012 | Mechanical Traction |
| 97014 | Electrical Stimulation |
| 97022 | Whirlpool Treatment |
| 97026 | Infrared Treatment |

51. Upon information and belief, patients have received the supportive modalities, identified in Paragraph 50, at Spine Care while no licensed chiropractor was on the premises.

11

52.    Upon information and belief, the Defendants have improperly billed Metropolitan for
       supportive modalities allegedly provided, even though no licensed provider was on the
       Spine Care premises when the treatments were administered.

53.    Upon information and belief, the total number of visits where a patient is personally
       treated by Dr. Huynh or another licensed chiropractor is typically only three to six visits,
       a small fraction of the patient's total number of visits.

54.    Upon information and belief, the percentage of CPT codes billed by the Defendants for
       each patient requiring direct contact with a licensed provider is typically between 40%
       and 50%.

55.    Upon information and belief, even if the patients were provided the treatments for which
       the Defendants have billed Metropolitan, several of the procedures are duplicative and
       unnecessary when provided during the same treatment session.

56.    Upon information and belief, the average duration for each patient visit is twenty to thirty
       minutes, although forty-five minutes or longer is often required in order to properly
       administer all the medical treatments billed for on a particular date.

57.    The Defendants use daily Patient Progress Reports, which are intended to memorialize
       the subjective complaints of the patient, the objective analysis of the chiropractor, and the
       chiropractor's treatment plan for future visits.

58.    The Defendants' Patient Progress Reports do not indicate the planned treatment for the
       patient, but rather only indicate the modalities allegedly provided to the patient on that
       day, so that the progress reports match the itemized billing statement submitted to
       Metropolitan.

12

59. Upon information and belief, each patient signs all Patient Progress Reports while still blank, and is thereby denied the opportunity to review whether the subjective complaints listed on the Patient Progress Reports are accurate.

60. The information written on the Patient Progress Report is written in English by a Spine Care staff member, which raises concerns whether most of the patients, which do not speak, read, or write English, can even determine if what is included on the Patient Progress Report corresponds to their actual injuries and subjective complaints.

61. Upon information and belief, the Patient Progress Reports and narrative reports completed by the Defendants do not coincide with the unique and reported conditions of the individual patient, but invariably show a patterned marginal and incremental improvement, thereby falsely justifying further treatment.

62. Assuming a patient completes his or her treatment program, Dr. Huynh conducts a final examination and issues a narrative report which mirrors the initial evaluation in an attempt to justify the treatments provided.

63. Upon information and belief, the Defendants have never submitted a bill to Metropolitan below the $2,000.00 statutory tort threshold, for any patient who has completed the treatment program recommended and administered by the Defendants.

64. Further confirming the Defendants' fraudulent treatment scheme, patients involved in the same motor vehicle accident frequently begin and end their treatment programs on the same dates, receive the same or substantially similar treatment programs, incur virtually the same medical expenses, and are determined to be totally and partially disabled for the same duration, despite apparent differences in age, height, weight, prior medical history, present condition, and other objective differences.

65.    The frequency of the circumstances discussed in Paragraph 64 demonstrates that the
       similarities in treatment programs for different patients are beyond mere coincidence and
       establishes a fraudulent treatment scheme, whereby treatment is rendered to patients
       without considering such critical factors as: (1) the unique physical characteristics of each
       patient (age, height, weight, gender, ability to recover, etc.); (2) the relevant past medical
       history of each patient; and, (3) the differing circumstances regarding each patient's
       apparent injuries (seatbelt fastened, location in the vehicle, orientation at the time of the
       accident, etc.).

## Payments Made by Metropolitan

66.    As the patients proceed through the treatment program, the Defendants, under an
       Assignment of Benefits, submit the fraudulent records and bills to Metropolitan for
       payment through the available PIP coverage.

67.    The Defendants, with knowledge of the statutory framework governing the No-Fault
       insurance system, utilize the presumption afforded to licensed providers that medical
       records and bills submitted by a licensed provider are evidence of the necessary and
       reasonable nature of the treatments provided to the patient.

68.    Metropolitan, in good faith, relied upon the Defendants' documents and was wrongfully
       induced into making payments to the Defendants.

69.    Between 2001 and 2004, Metropolitan paid the Defendants in excess of four hundred,
       ninety-four thousand dollars ($494,000.00) in PIP benefits relating to approximately 165
       individual claims.

14

70.    When circumstances required, Metropolitan would schedule an Independent Medical
       Examination ("IME") for a patient in an effort to ascertain the reasonableness of that
       patient's continued medical treatment.

71.    Upon information and belief, the Defendants would learn of the scheduled IME and
       ensure that the patient's treatment program was completed and injuries resolved just days
       prior to the date scheduled, thereby defeating its very purpose and rendering any IME of
       the patient useless.

72.    The Defendants further frustrate any additional investigation by Metropolitan by
       providing virtually illegible medical records and notes. This obstructs Metropolitan's
       ability to obtain an accurate and thorough peer review of the patient's treatment program
       and medical records.

73.    In cases where Metropolitan has denied PIP payments to the Defendants on the basis that
       the patient failed to appear for an IME, as is required under the No-Fault statute, the
       Defendants have instituted litigation against Metropolitan in an effort to collect payments
       on their fraudulent claims. Metropolitan has suffered damages as a result of this practice,
       in that it incurred legal expenses and other costs in defending these frivolous claims.

74.    By using the statutory framework of the No-Fault system, the Defendants are able to
       submit fraudulent bills to Metropolitan for payment, mask these fraudulent documents
       with an aura of legitimacy through the "necessary and reasonable" presumptions afforded
       to licensed health care professionals, then pressure Metropolitan to pay or settle each
       claim under the threat of litigation and/or the increased expense of further investigation.

15

## Consequences of the Defendants' Fraudulent Scheme

75. Metropolitan has been wrongfully induced into paying the Defendants' exaggerated claims for benefits for fictitious and grossly inflated medical treatment.

76. As a result of the Defendants' false and/or inflated bills, its patients routinely surpass the $2,000.00 statutory tort threshold, thereby allowing them to make bodily injury claims against a Metropolitan insured's policy for pain and suffering as a result of their alleged injuries.

77. The Defendants' wrongful actions thereby induce Metropolitan into settling or defending the false bodily injury claims at significant expense.

78. Between 2002 and 2004, Metropolitan paid in excess of three hundred and six thousand dollars ($306,000.00) in bodily injury benefits relating to 79 bodily injury claims in which were based on the Defendants' fictitious medical notes, records, and bills.

## Subrogation

79. The Defendants have also sought payment for fraudulent treatment and false bills from other insurance carriers.

80. Should Metropolitan's insured be determined liable for a motor vehicle accident, any other insurance carrier which was induced into making payments to the Defendants through their own PIP policies, may seek subrogation against Metropolitan for the amount of PIP benefits paid, as well as the costs associated with making those payments.

81. In those situations, Metropolitan made the good faith assumption that the Defendants' records and bills are reasonable and necessary, and honored claims for subrogation from the other insurance companies.

82.     As a result of this regular business practice, Metropolitan has been wrongfully induced to
        subrogate the payments of another insurance carrier, thereby suffering the damages and
        expense caused by the Defendants' fraudulent activity.

83.     Should Metropolitan refute the validity of the Defendants' bills and reject the other
        insurance carrier's request for subrogation, both carriers are required to submit the issue
        to an inter-company arbitration.

84.     Both Metropolitan and the other insurance carrier incur significant expenses and costs
        associated with this arbitration.

85.     Regardless of the outcome of the arbitration, the Defendants' keep the fruits of their
        fraudulent scheme, while the arbitration merely determines which insurance carrier will
        ultimately be responsible for the payment of the insurance proceeds.

## SPECIFIC EXAMPLES OF THE DEFENDANTS' FRAUDULENT SCHEME

### Upcoding

86.     The Initial, Interim, and Discharge Examinations allegedly provided to the patients were
        routinely "upcoded." Upcoding consists of billing an examination with a more expensive
        Current Procedural Terminology ("CPT") code than is warranted, given the extent of the
        examination actually provided, and the nature of the injuries presented by the patient.

87.     The American Medical Association's Standard Edition Current Procedural Terminology
        2001 ("CPT Codebook"), states, "A new patient is one who has not received any
        professional services from the physician, or another physician of the same specialty who
        belongs to the same group practice, within the past three years."

88.     The Defendants always bill new patient exams at a higher rate than existing patient
        exams of equal complexity.

17

89.  Several patients have treated with the Defendants on multiple occasions, and for separate
     accidents, within a three-year time period, yet the Defendants assign a new patient exam
     CPT code each time the same patient obtains treatment with the Defendants for a new
     motor vehicle accident. Often the patients will seek PIP benefits from different insurance
     carriers for each of these accidents.

90.  The following table is, by way of example only, a list of patients who have treated with
     the Defendants more than once during a three year period, yet the Defendants have billed
     these patients' subsequent visits as new patient examinations:

|   | PATIENT | DATES OF LOSS | INSURER | CLAIM NOS. |
|---|---------|---------------|---------|------------|
| • | Anh Bui | 03/19/2004<br>05/21/2004 | Liberty Mutual<br>Metropolitan | 1010865886505<br>WBB94815 |
| • | Thuy Nguyen | 04/15/2002<br>04/09/2004 | Peoples Service<br>Metropolitan | 000056386004<br>WBB83702 |
| • | Hoang Nguyen | 06/10/2001<br>04/09/2004 | One Beacon<br>Metropolitan | 0BG09737X0308<br>WBB83702 |
| • | Minh Doan | 10/24/2003<br>08/22/2004 | Arbella<br>Metropolitan | 000500141202<br>WBC05727 |
| • | Thuy Tran | 12/06/2003<br>7/28/2004 | Safety<br>Metropolitan | 0001514175AC<br>WBC01601 |
| • | Dung Le | 10/31/2002<br>12/26/2004 | Liberty Mutual<br>Metropolitan | 1010860510401<br>WBC26795 |
| • | My Khiet | 11/22/2002<br>08/08/2004 | Liberty Mutual<br>Metropolitan | 1010860770102<br>WBC03456 |
| • | Ahn Nguyen | 04/13/2002<br>10/01/2004 | Peoples Service<br>Metropolitan | 000056385004<br>WBC12384 |
| • | Toan Tran | 05/11/2002<br>10/11/2002 | Metropolitan<br>Metropolitan | CRB05313<br>CRB20924 |

18

| • | Nhut Cao | 06/09/2001 | Fireman's Fund | 6200105261801 |
| | | 06/26/2004 | Metropolitan | WBB98985 |

91. In an effort to disguise multiple visits for multiple accidents, during Metropolitan's investigations, patients will falsely deny having treated at Spine Care or feign memory loss, even though the events may have occurred in the same calendar year.

92. By way of example only, during an examination under oath, Nhut Cao, Claim Number WBB98985, falsely testified that for his accident involving Metropolitan, he had learned of the Defendants through a local Vietnamese newspaper even though he had treated at Spine Care in the past.

93. By way of example only, My Khiet, Claim Number WBC03456, frequently attempted to cover up the fact that she had previously treated at Spine Care when she falsely testified that she had simply read about the Defendants in a local Vietnamese newspaper, when seeking treatment for the accident involving Metropolitan.

94. By way of example only, Minh Doan, Claim Number WBC05727, testified under oath that he had learned of the Defendants through a local newspaper, even though he had treated with the Defendants less than a year before.

## **Treatment for Fictitious Injuries**

95. Certain patients have testified under oath that the Defendants falsely reported providing medical treatments for injuries the patient neither sustained nor complained of arising from the reported motor vehicle accident.

96. By way of example only, Muoi Thi Huynh, Claim Number WBB92967, testified under oath that as a result of an automobile accident, she suffered injuries to both knees and her left arm, yet the Defendants billed for treatments rendered to her head, back, and neck.

19

Ms. Huynh flatly rejected the validity of the Defendants' Patient Progress Reports which falsely indicated that the she had complained of head, back, and neck injuries.

97.   By way of example only, T. Le, Claim Number WBB94815, testified under oath that his injuries were to his neck, head, and shoulders, yet the Defendants allegedly provided and billed for treatments related to lower back pain, which Mr. Le did not sustain.

98.   By way of example only, Steven Nguyen, Claim Number WBC14443, another patient providing examination under oath testimony, stated that he had sustained injuries to his neck and suffered headaches as a result of the accident. He denied having back pain and denied receiving treatment from the Defendants for back pain. Yet, the Defendants' records for Mr. Nguyen indicate that he continually suffered from back pain, and was provided several treatments to relieve this pain.

## Billing for Treatments Never Provided to the Patient

99.   The Defendants have billed for fictitious modalities of treatments never provided to certain patients.

100.  The following is, by way of example only, a list of patients who have provided examination under oath testimony wherein they testified to have never received infrared treatment therapy, yet the Defendants routinely billed for this modality as part of the patient's overall treatment:

| PATIENT NAME | CLAIM NUMBER |
|---|---|
| • Muoi Thi Huynh | WBB92967 |
| • Nhut Cao | WBB98985 |
| • Thuy Nguyen | WBB83702 |
| • My Thi Nguyen | WBB83702 |
| • Thanh Nguyen | WBB99010 |
| • Dung Le | WBB99010 |
| • D. Le (minor) | WBB99010 |
| • T. Le (minor) | WBB94815 |

20

| | |
|---|---|
| • My Khiet | WBC03456 |
| • R. Kwan (minor) | WBC05727 |
| • Renee Kwan | WBC05727 |
| • Minh Doan | WBC05727 |
| • Steven Nguyen | WBC14443 |

101. According to the CPT Codebook, CPT 97124 is to be used when providing massage therapy, which requires the chiropractor or therapist to have direct, one-on-one patient contact.

102. The following is, by way of example only, a list of patients who have provided examination under oath testimony wherein they testified to having only received massage therapy by sitting in a "massage chair," which they were placed in by an unlicensed staff member. These patients denied ever receiving a manual massage by Dr. Huynh or any other licensed chiropractor or massage therapist.

| PATIENT NAME | CLAIM NUMBER |
|---|---|
| • Meo Thi Tran | WBB92967 |
| • Thuy Nguyen | WBB83702 |
| • Hoang Van Nguyen | WBB83702 |
| • Thanh Nguyen | WBB99010 |
| • Dung Le | WBB99010 |
| • D. Le (minor) | WBB99010 |
| • Anh Bui | WBB94815 |
| • R. Kwan (minor) | WBC05727 |
| • Renee Kwan | WBC05727 |
| • Steven Nguyen | WBC14443 |

103. In another instance, a patient claimed to have received one manual massage during his entire treatment, and yet the Defendants billed for twenty-five (25) massage treatments.

104. The following is, by way of example only, a list of patients who have provided examination under oath testimony, wherein they testified to have never received chiropractic manipulations from anyone at Spine Care, including Dr. Huynh.

21

PATIENT NAME                    CLAIM NUMBER

- Meo Thi Tran              WBB92967
- Muoi Thi Huynh            WBB92967
- Hoang Van Nguyen          WBB83702
- Nhut Cao                  WBB98985
- Thuy Nguyen               WBB83702
- Thanh Nguyen              WBB99010
- Dung Le                   WBB99010
- D. Le (minor)             WBB99010
- R. Kwan (minor)           WBC05727
- Renee Kwan                WBC05727

105.    A review of the Defendants' records coupled with the patient testimony reveals that even
        if Dr. Huynh provided a manipulation each time he saw a patient, the number of
        manipulations billed far exceed the number of times each patient confirms receiving
        treatment by Dr. Huynh or another licensed chiropractor at Spine Care.

### False Medical Examination Findings

106.    In several instances, Dr. Huynh failed to inquire into the patient's relevant medical
        history prior to diagnosing the patient's injuries and automatically declaring that the
        patient's alleged injuries were causally related to the most recent motor vehicle accident.

107.    Nhut Cao, Claim Number WBB98985, was involved in two motor vehicle accidents
        within twenty-four hours, yet the Defendants medical records make no reference to such
        significant circumstances.

108.    Renee Kwan, Claim Number WBC05727, had pre-existing scoliosis which was discussed
        with the physician conducting her IME. The Defendants' records make no reference to
        such a significant medical condition, or the effects it might have had on the success of the
        Defendants' proposed treatment plan for low back pain.

109.    Meo Thi Tran, Claim Number WBB92967, had been discharged from a chiropractic and
        physical therapy treatment program only one month prior to a subsequent motor vehicle

22

accident in which she sought treatment from the Defendants. The Defendants

examination reports make no mention of this prior accident involving injuries virtually

identical to the ones sustained in the most recent motor vehicle accident.

## Billing for Improper Treatments

110. The Massachusetts Chiropractic Rules of Professional Conduct require that a licensed

chiropractor be on the premises whenever supportive modalities described in Paragraph

49, are administered to a patient.

111. There were several times when Dr. Huynh was away from the Spine Care clinic, with no

other licensed chiropractor present, yet patients received supportive modalities, which

were billed to Metropolitan.

112. Anh Bui, Claim Number WBB94815, testified under oath that although he often

requested to see Dr. Huynh while treating at Spine Care, he was informed by staff that

Dr. Huynh was probably "out getting coffee or something."

113. My Khiet, referred to in Paragraph 93, also testified that she received hot/cold pack

treatments for no apparent medical reason, but because she simply requested that

particular type of treatment be provided by the unlicensed staff.

114. My Thi Nguyen, Claim Number WBB83702, testified under oath that the treatments

administered by the Defendants would often be based on, "whatever I like."

## Treatment Records are Inconsistent with the Treatment Provided

115. My Khiet, referred to in Paragraphs 93 and 113, also testified that she terminated her

treatment with the Defendants in order to continue school and work, yet the Defendants'

final narrative report indicates that the patient's treatment stopped because her pain was

completely resolved.

116.   Renee Kwan and her 14 year-old brother, R. Kwan, Claim Number WBC05727, both
       testified under oath that they received treatments with the Defendants on identical days,
       yet the Defendants' records indicate that these patients frequently treated on different
       days.

117.   Muoi Thi Huynh, referred to in Paragraph 96, further testified that the Patient Progress
       Reports submitted by the Defendants were completely inaccurate and falsely depicted her
       subjective complaints and injuries.

## Patients Receiving Virtually Identical Treatment

118.   The Defendants' standard treatment program ensures that patients involved in the same
       accident receive substantially the same level of treatment, regardless of the severity and
       type of injury, resulting in substantially the same medical expenses incurred for each
       patient.

119.   The treatment program depicted in Charts 1 and 2, which follow, are representative of the
       scheme used by the Defendants. The Defendants' treatment template does not take into
       consideration the unique physical characteristics of each individual patient, the age,
       height or weight of each patient, the gender of each patient, prior medical history, each
       patient's ability to recover from injury, or other distinguishing factors that would be
       expected in large groups of patients.

## Chart 1

| PATIENT INFORMATION | Hien Tran | Cuong Le | | Son Khac Vu | Hong T. Le |
|---|---|---|---|---|---|
| | 33 year-old male | 21 year-old male | | 42 year-old male | 34 year-old female |
| CLAIM NUMBER | CRB31425 | CRB31425 | | CRA67554 | CRA67554 |
| DATE OF LOSS | 1/3/2003 | 1/3/2003 | | 7/22/2001 | 7/22/2001 |
| | | | | | |
| CPT CODES BILLED | | | | | |
| 97010 | 8 | 7 | | 7 | 4 |
| 97012 | 18 | 16 | | 22 | 19 |
| 97014 | 8 | 7 | | 7 | 4 |
| 97022 | 2 | 3 | | 6 | 8 |
| 97026 | 5 | 8 | | 0 | 0 |
| 97124 | 17 | 14 | | 5 | 7 |
| 97140 | 12 | 14 | | 9 | 12 |
| 98940-98943 | 11 | 14 | | 19 | 21 |
| 99201-99205 | 1 | 1 | | 1 | 1 |
| 99211-99215 | 2 | 2 | | 2 | 2 |
| TOTAL PROCEDURES BILLED | 84 | 86 | | 78 | 78 |
| PROCEDURES REQUIRING DIRECT PATIENT CONTACT | 43 | 45 | | 36 | 43 |
| PERCENTAGE OF TOTAL PROCEDURES | 51% | 52% | | 46% | 55% |
| TOTAL PATIENT VISITS | 24 | 24 | | 22 | 22 |
| TOTAL BILLING FROM SC&T | $3,485.00 | $3,615.00 | | $3,325.00 | $3,355.00 |

## Chart 2

| PATIENT INFORMATION | Giong Duong | My Thanh Thi Nguyen | Hung Tran | Dieuhuyen Nguyen |
|---|---|---|---|---|
| | 54 year-old male | 32 year-old female | 39 year-old male | 32 year-old female |
| CLAIM NUMBER | WFB28923 | WFB28923 | CRB21517 | CRB21517 |
| DATE OF LOSS | 2/13/2004 | 2/13/2004 | 6/16/2002 | 6/16/2002 |
| | | | | |
| CPT CODES BILLED | | | | |
| 97010 | 6 | 4 | 10 | 10 |
| 97012 | 16 | 15 | 23 | 24 |
| 97014 | 6 | 4 | 9 | 9 |
| 97022 | 0 | 3 | 4 | 5 |
| 97026 | 13 | 12 | 0 | 0 |
| 97124 | 11 | 13 | 15 | 18 |
| 97140 | 6 | 3 | 10 | 9 |
| 98940-98943 | 14 | 14 | 18 | 16 |
| 99201-99205 | 1 | 1 | 1 | 1 |
| 99211-99215 | 2 | 2 | 1 | 2 |
| TOTAL PROCEDURES BILLED | 75 | 71 | 91 | 94 |
| PROCEDURES REQUIRING DIRECT PATIENT CONTACT | 34 | 33 | 45 | 46 |
| PERCENTAGE OF TOTAL PROCEDURES | 45% | 46% | 49% | 49% |
| TOTAL PATIENT VISITS | 22 | 21 | 28 | 28 |
| TOTAL BILLING FROM SC&T | $3,430.00 | $3,270.00 | $ 4,180.00 | $4,024.00 |

26

## Improper and Illegal Relationships with Attorneys

120. The Defendants have sought, fostered, and maintained inappropriate and unlawful relationships with local attorneys, who use their relationship with the Defendants to obtain new personal injury clients.

121. Massachusetts law prohibits a health care provider from communicating with an attorney for the purpose of allowing the attorney to solicit business from a patient or otherwise attempt to engage in settlement negotiations regarding a personal injury claim. M.G.L. c.221, §44A.

122. Thanh Nguyen, Claim Number WBB99010, has testified under oath that she asked Dr. Huynh about the need for an attorney. Dr. Huynh provided her with the business card of a local attorney.

123. D. Le, Claim WBB99010, a minor involved in the same accident as Thanh Nguyen, confirmed Ms. Nguyen's testimony when he testified separately and under oath that he had also met the same attorney referred in Paragraph 122, during the meeting arranged by Dr. Huynh, which took place at the Spine Care clinic.

124. Anh Bui, Claim Number WBB94815, testified under oath that he had previously treated with Dr. Huynh in the past, at which time Dr. Huynh had recommended an attorney for that matter. This patient asked Dr. Huynh whether he could use the same attorney for the new accident and was told that he should find a different attorney, as the patient's previous insurance claim had not yet been settled.

125. Anh Bui also testified that Dr. Huynh informed him of the need to obtain treatments in excess of $2,000.00 in order to make his own insurance claim.

27

126.  According to the testimony of yet another patient, Steven Nguyen, Claim Number
      WBC14443, Dr. Huynh recommended the same attorney referred to in Paragraphs 122
      and 123, and arranged a meeting at Spine Care between that attorney, Mr. Nguyen, and
      Dr. Huynh.

127.  The Defendants have established and perpetuated a sophisticated and comprehensive
      scheme to deceive and defraud Metropolitan and other insurance carriers through all of
      the following:

      (a)   Using the statutory presumption of reasonableness granted to licensed
            professionals concerning the reasonable and necessary nature of medical bills;

      (b)   Ensuring that every patient exceeds the statutory tort threshold necessary to
            make a bodily injury claim, thereby securing the cooperation of the patient and
            enticing future patients involved in minor motor vehicle accidents to treat at
            Spine Care;

      (c)   Utilizing the statutory framework of the Massachusetts No-Fault system, which
            is designed to streamline medical payments between insurers and providers.
            Given the constraints placed on insurance carriers under the unfair insurance
            settlement and trade practice statutes, this system necessarily depends on the
            insurance carriers good faith reliance on the integrity of the health care provider
            and the accuracy of the medical records and bills submitted.  The Defendants
            use this system to their improper advantage;

      (d)   Establishing, fostering, and soliciting improper relationships with local
            attorneys, thereby ensuring the cooperation of the attorney's client-patient, and
            guaranteeing future patient referrals from those attorneys;

(e) Establishing, fostering, and soliciting improper relationships with local "multi-service" businesses, whose sole purpose is to assist persons allegedly injured in motor vehicle accidents to secure legal representation, seek chiropractic treatment, and complete all forms and paperwork necessary to make a PIP claim.

## CAUSES OF ACTION

### COUNT I: COMMON LAW FRAUD/DECEIT

128. Metropolitan repeats and realleges Paragraphs 1 through 127 of its Complaint, as if fully set forth herein.

129. The Defendants intentionally, knowingly, fraudulently, and with an intent to deceive, submitted patient treatment records and bills which contained false statements of material facts, including but not limited to the following fraudulent material misrepresentations:

(a) False and misleading statements and information as to the type, existence, and extent of the patients symptoms and injuries;

(b) False and misleading statements and information designed to conceal the fact that the diagnoses were exaggerated, and that the treatment based on those diagnoses was not medically reasonable and necessary;

(c) False and misleading statements and information regarding the chiropractic and physical therapy treatments actually provided to each individual patient;

(d) False and misleading statements and information as to the efficacy of the treatments allegedly provided to each patient, as well as the periodic progress of each patient throughout his or her treatment program;

29

(e)     False and misleading statements and information as to the causal link between the alleged injuries and the motor vehicle accident under which the PIP claim is being made; and,

(f)     False, misleading, and illegible patient progress reports designed to frustrate, mislead, and hinder peer records reviews used by Metropolitan to confirm the necessary and reasonableness of a patient's medical treatments.

130.    The Defendants knew the foregoing material misrepresentations to be false when made.

131.    The Defendants supplied this fraudulent and false information to Metropolitan for the purpose of guiding Metropolitan in its business transactions, namely the payment of insurance benefits.

132.    The Defendants made these false representations with the intention and purpose of inducing Metropolitan to rely and act upon them in making its determination whether to pay Personal Injury Protection and/or Bodily Injury benefits.

133.    Metropolitan did, in fact, reasonably and justifiably rely on the foregoing material misrepresentations as true, and acted upon them by:

(a)     Making PIP payments directly to the Defendants based on their fraudulent treatment records and bills;

(b)     Entering into settlement negotiations and making bodily injury payments to third party patients who made bodily injury claims based on the Defendants' fraudulent treatment records and bills, which allowed the patient to exceed the $2,000.00 statutory tort threshold necessary to make such a claim; and,

(c)     Making inflated and excessive subrogation payments to other insurance carriers who paid the Defendants PIP benefits, then sought reimbursement

30

> from Metropolitan, as Metropolitan's insured was determined responsible for
> the motor vehicle accident.

134. Had Metropolitan known of the fraudulent content of the Defendants' treatment, medical records, reports, and bills, Metropolitan would not have paid the submitted claims by the Defendants containing the fraudulent information.

135. As a result of the Defendants' fraudulent conduct and Metropolitan's justifiable reliance and action thereon, Metropolitan has sustained compensatory damages and been injured in its business and property in an amount to be determined at trial, plus interests, costs, and other relief that the Court deems just.

**WHEREFORE**, the Plaintiff, Metropolitan, respectfully requests that this Honorable Court grant it the following relief:

(a) Enter complete and final judgment in favor of Metropolitan and against each and every Defendant on all counts of the Complaint;

(b) Recovery with interest for Metropolitan of any and all monies paid directly to each and every Defendant as a result of the Defendants' fraudulent scheme;

(c) Recovery with interest for Metropolitan of any and all monies paid to any claimant who submitted a bodily injury claim to Metropolitan based on the Defendants' fraudulent medical records and bills;

(d) Recovery with interest for Metropolitan of any and all monies paid to other insurance carriers through subrogation based on the Defendants' fraudulent medical records and bills;

(e) Recovery with interest for Metropolitan of all investigative fees, expert fees, labor costs, and any other fees incurred by Metropolitan in order to refute each

31

individual claim, which was based on the Defendants' fraudulent medical records and bills;

(f)    Recovery with interest for Metropolitan of all legal expenses and costs incurred by Metropolitan, which were required to defend against any and all statutory demands for payment and/or settlement, as well as any and all legal action against Metropolitan, brought directly by the Defendants, or any claimant relying on the Defendants' fraudulent medical records and bills as the basis for legal action against Metropolitan;

(g)    Recovery with interest for Metropolitan of all litigation costs, investigation and labor costs, as well as any other costs and attorney's fees incurred by Metropolitan in bringing this action against the Defendants;

(h)    Any and all relief this Court deems just and proper.

## COUNT II: BREACH OF CONTRACT AND VIOLATIONS OF M.G.L. c. 90, §§34A and 34M

136.    Metropolitan repeats and realleges Paragraphs 1 through 135 of its Complaint, as if fully set forth herein.

137.    Pursuant to M.G.L. c. 90, §34A, a person authorized under this statute to receive Personal Injury Protection ("PIP") benefits is entitled payment "of all reasonable expenses incurred within two years from the date of accident for necessary medical, surgical, x-ray, and dental services...."

138.    Pursuant to M.G.L. c. 90, §34M, a health care provider that provides medical services to any entitled to recover PIP benefits under a Standard Massachusetts Automobile

32

Insurance Policy may be considered a party to the insurance contract under which the

injured person is entitled to collect benefits.

139.   Between 2001 and the present, Metropolitan has paid in excess of $494,200.00 to the

Defendants in PIP benefits pursuant to M.G.L. c. 90, §34M and insurance contracts

issued by Metropolitan.

140.   The Defendants' conduct, as described herein, constitutes a breach of those contracts and

a violation of M.G.L. c. 90, §34M because the Defendants intentionally inflated bills for

treatment services, billed for treatment services that had not been rendered, and provided

treatment for injuries that did not exist.

141.   Metropolitan has been injured as a result of the Defendants' breach of contract and

statutory violations.

**WHEREFORE**, the Plaintiff, Metropolitan, respectfully requests that this Honorable

Court grant it the following relief:

      (a)   Enter complete and final judgment for Metropolitan and against each and

           every Defendant on all counts of the Complaint;

      (b)   Recovery with interest for Metropolitan of any and all monies paid directly or

           indirectly to each and every Defendant as a result of the Defendants'

           fraudulent scheme and breach of contract;

      (c)   Recovery with interest for Metropolitan of any and all legal expenses incurred

           by Metropolitan in defending any legal action brought by the Defendants in an

           attempt to collect payment for individual claims under M.G.L. c. 90, §34M

           based on its fraudulent treatment and billing practices;

33

(d)    Reimbursement with interest for Metropolitan for the fair and reasonable value of the labor and resources expended to detect and expose the Defendants' efforts and attempts to defraud Metropolitan. This is to include, but is not limited to, investigative costs, expert fees, attorney fees, and all other fees and expenses related to the investigation;

(e)    All attorneys fees incurred by Metropolitan; and,

(f)    Any and all relief this Court deems just and proper.

## COUNT III: NEGLIGENCE

142.    Metropolitan repeats and realleges Paragraphs 1 through 141 of its Complaint, as if fully set forth herein.

143.    The Defendants had a duty to provide chiropractic and physical therapy treatment to patients that was reasonable and necessary, given the subjective complaints of the patients and the objective findings of a licensed chiropractor.

144.    Pursuant to the applicable Massachusetts regulations, the Defendants were required to "establish and maintain a separate, adequate and accurate written treatment record for each patient" in its care. These records are to be legible and self-explanatory.

145.    The Defendants breached this duty, as the chiropractic and physical therapy treatment notes, records, and bills submitted in support of insurance claims were illegible and inaccurate.

146.    Pursuant to the applicable Massachusetts regulations, the Defendants had a duty to ensure that no supportive procedures and therapies, to include the supportive modalities described in Paragraph 50, are administered to patients when there are no licensed chiropractors or physical therapists on the Spine Care premises.

34

147. The Defendants breached this duty as its patients were provided supportive modality treatments while there were no licensed chiropractors or physical therapists on the Spine Care premises.

148. Pursuant to applicable Massachusetts regulations, the Defendants had a duty to ensure that patient care functions, including initiating and altering treatment plans, modifying a treatment procedure, and/or rendering opinions regarding a patient's current status were not delegated to unlicensed staff.

149. The Defendants breached this duty as its unlicensed staff routinely rendered opinions on a patient's current status, administered medical treatment outside of the prescribed treatment plan without consulting with a licensed chiropractor, and altered a patient's treatment plan without consulting a licensed chiropractor prior to administering treatment.

150. Pursuant to applicable Massachusetts regulations, the Defendants had a duty not to engage in excessive treatment or excessive billing in the course of its practice, which included providing and billing for treatment unrelated to the condition of the patient.

151. The Defendants breached this duty as Metropolitan was billed for duplicative treatments.

152. The Defendants negligently submitted bills for medical treatments that were never rendered to the patients.

153. As a direct and proximate result of the Defendants' negligent practice and negligent supervision of its employees, patients presented Metropolitan with PIP and Bodily Injury claims that were grossly inflated, based on the Defendants' misleading and negligent medical records, notes, and bills.

35

154.    Metropolitan suffered damages in excess of eight hundred thousand dollars ($800,000.00)
        for PIP and Bodily Injury benefits that were wrongfully paid, based on the Defendants'
        negligent, unnecessary, and unreasonable treatment practices.

        **WHEREFORE**, the Plaintiff, Metropolitan, respectfully requests that this Honorable
Court grant it the following relief:

    (a)    Enter complete and final judgment in favor of Metropolitan and against each
           and every Defendant on all counts of the Complaint;

    (b)    Recovery with interest for Metropolitan of any and all monies paid directly or
           indirectly to the Defendants as a result of the Defendants' negligent practies;

    (c)    Recovery with interest for Metropolitan of any and all settlement monies paid
           to any and all claimants who submitted bodily injury claims to Metropolitan
           based on the Defendants' negligent medical records, notes, bills, and practices;

    (d)    Recovery with interest for Metropolitan of any and all legal expenses incurred
           in defending against litigation brought against Metropolitan by bodily injury
           claimants based upon the Defendants' negligent medical records, notes, bills,
           and practices;

    (e)    All attorney's fees incurred by Metropolitan; and,

    (f)    Any and all relief this Court deems just and proper.

## COUNT IV:  UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER M.G.L. c. 93A, §§2 AND 11

155.    Metropolitan repeats and realleges Paragraphs 1 through 154 of its Complaint, as if fully
        set forth herein.

156.    Metropolitan was, at all material times, engaged in the conduct of a trade or commerce within the Commonwealth of Massachusetts, as those terms are defined and used in M.G.L. c. 93A, §§2 and 11.

157.    The Defendants were, at all material times, engaged in the conduct of a trade or commerce within the Commonwealth of Massachusetts, as those terms are defined and used in M.G.L. c. 93A, §§2 and 11.

158.    The common law fraud, breach of contract, and intentional interference with an advantageous business relationship engaged in by each and every Defendant, as described herein, constituted unfair and deceptive business practices under M.G.L. c.93A, §2.

159.    Metropolitan sustained a loss of money or property as a direct and proximate result of those unfair and deceptive acts of each Defendant.

160.    The unfair and deceptive acts committed by each Defendant were willful and knowing violations of M.G.L. c. 93A, §2.

**WHEREFORE**, the Plaintiff, Metropolitan, respectfully requests that this Honorable Court grant it the following relief:

(a)    Enter complete and final judgment for Metropolitan and against each and every Defendant on all counts of the Complaint;

(b)    Recovery with interest for Metropolitan for any and all monies paid to any individual, business, or other entity, as a result of the unfair and deceptive business practices of the Defendants, as described herein;

(c)    Treble the actual damages and award costs and attorney's fees incurred in bringing this action pursuant to M.G.L. c. 93A;

37

    (d)    Reimbursement with interest for Metropolitan for the fair and reasonable value of the labor and resources expended to detect and expose the Defendants' efforts and attempts to defraud Metropolitan. This is to include, but is not limited to, investigative costs, expert fees, attorney fees, and all other fees and expenses related to the investigation; and,

    (e)    Any and all relief this Court deems just and proper.

### COUNT V: INJUNCTIVE RELIEF PURSUANT TO M.G.L. c. 93A, §11

161.    Metropolitan repeats and realleges Paragraphs 1 through 160 of its Complaint, as if fully set forth herein.

162.    M.G.L. c.93A, §11 provides that a party who has suffered damages as a result of another party's unfair and deceptive business practice, may bring an action by way of original complaint for damages, and such equitable relief, including an injunction, as the Court deems to be necessary and proper.

163.    As a result of the Defendants' unfair and deceptive business practices, as described herein, Metropolitan has been damaged, and will continue to incur additional damage should the Defendants be allowed to continue their fraudulent scheme.

164.    The Defendants have perpetuated their fraudulent scheme for more than four years, and have demonstrated no intention to cease their fraudulent and unlawful activities.

165.    The Defendants' unlawful and deceptive practices harm not only Metropolitan, but the entire Massachusetts automobile insurance industry, as the Defendants do business with a number of insurance carriers other than Metropolitan.

**WHEREFORE**, the Plaintiff, Metropolitan, respectfully requests that this Honorable Court grant it the following injunctive relief pursuant to M.G.L. c. 93A, §11:

(a)    A permanent injunction enjoining and restraining the Defendants from providing chiropractic or physical therapy goods or services to any person seeking benefits from Metropolitan pursuant to M.G.L. c. 90, §34M;

(b)    A permanent injunction enjoining and restraining the Defendants from submitting to Metropolitan any bills seeking payment for chiropractic or physical therapy services provided to any person seeking insurance benefits from Metropolitan;

(c)    A permanent injunction enjoining and restraining the Defendants from submitting to Metropolitan any chiropractic or physical therapy records or bills to support or otherwise establish the reasonable and necessary nature of the medical expenses incurred by a patient making a claim for PIP or bodily injury benefits under an Metropolitan motor vehicle policy.

(d)    An Order applying the requested injunctive relief in subparagraphs (a) through (c) to apply to:

1)    Any chiropractic or physical therapy clinic or facility that currently employs Hai Nhu Huynh, D.C., or which Dr. Huynh maintains an ownership interest, serves as a corporate officer or director, or in which Dr. Huynh maintains a position of control over business' daily operations; and,

2)    Any chiropractic or physical therapy clinic or facility in which Hai Nhu Huynh, D.C., or his agents, obtains a pecuniary or controlling interest.

(e)     Any and all relief this Court deems just and proper.

## **JURY DEMAND**

## **THE PLAINTIFF CLAIMS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.**

Respectfully submitted,
By the Plaintiff,
Metropolitan Property and Casualty
Insurance Company,
By its attorney,

Glenda H. Ganem, Esq.
BBO# 564374
McGovern & Ganem, P.C.
21 Merchants Row, 4th Floor
Boston, MA 02451
(617) 723-1444

Date: June 20, 2005

40

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Metropolitan Property and Casualty Insurance Company

**DEFENDANTS**

Huynh, Hai N. and Spine Care and Therapy, Inc.

**(b)** County of Residence of First Listed Plaintiff    Kent
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Middlesex
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

McGovern & Ganem, P.C.  21 Merchants Row, 4th Floor
(617) 723-1444        Boston, MA 02109

Attorneys (If Known)

None Known

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☒ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product / Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability / ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & / Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander / ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' / Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability / Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine / **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product / ☒ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle / Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability / ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal / Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment / Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ / **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations / ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment / ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - / ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §1332

Brief description of cause:
Tort and contract actions for fraudulent billing/treatment practices involving motor vehicle accident patients.

## VII. REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**
800,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☒ Yes    ☐ No

## VIII. RELATED CASE(S)
IF ANY

(See instructions):    JUDGE                    DOCKET NUMBER

DATE
June 20, 2005

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE