UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 05-11287-RGS

```
_____
                                   )
METROPOLITAN PROPERTY AND          )
CASUALTY INSURANCE COMPANY,        )
Plaintiff,                         )
                                   )
v.                                 )
                                   )
HAI NHU HUYNH and                  )
SPINE CARE AND THERAPY, INC.,      )
Defendants.                        )
_____)
```

**MEMORANDUM IN SUPPORT OF THE
DEFENDANTS' MOTION TO DISMISS**

Dr. Hai Nhu Huynh and Spine Care and Therapy, Inc. ("Spine Care") (collectively "defendants") submit this memorandum in support of their motion to dismiss the Complaint by plaintiff Metropolitan Property and Casualty Insurance Company ("plaintiff" or "Metropolitan"), pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

**I.   INTRODUCTION**

Metropolitan's Complaint is a textbook example of the type of pleading that has been condemned by the First Circuit for violating Rule 9(b)'s particularity requirements. Despite leveling most serious accusations of fraud against Dr. Huynh, a medical professional serving a largely immigrant Vietnamese population in Dorchester, Metropolitan attacks not with particularized allegations, as required by Rule 9(b), but with rhetoric, innuendo, and anecdote. Although it alleges that each and every one of 244 claims made by defendants (as assignees of their patients) are fraudulent, Metropolitan makes no effort to comply with this Circuit's mandate that a fraud claim identify "the time, place, and content of an alleged false representation."

*Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996).  Indeed the Complaint makes no reference <u>at</u> <u>all</u> to 228 of the 244 allegedly fraudulent claims, and even as to the 16 claims that are mentioned in the Complaint there is no reference to the date or even the content of the allegedly fraudulent statement.  Instead the Complaint relies on repetitive and unsupported references to "fraud" and "schemes."  The First Circuit has made it clear, however, that such pleading is insufficient: "referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985).  Because fraud is "at the core" of each of the Complaint's articulated theories of recovery, moreover, Rule 9(b) applies to the Complaint in its entirety. *Id.* at 443.  Accordingly, the entire Complaint should be dismissed under Rule 9(b).

In addition, each of the Complaint's four counts fails to state a claim on which relief can be granted, and each should be dismissed pursuant to Rule 12(b)(6).  Count I (Fraud) fails because the Complaint fails to allege that plaintiff relied on any fraudulent statement specifically alleged of defendants.  Count II (Breach of Contract) fails because the Complaint does not allege facts demonstrating the existence of a contractual relationship between the parties.  Count III (Negligence) fails because the Complaint's allegations do not sufficiently allege any "duty" owed by defendants to plaintiff.  And Count IV (Chapter 93A) is entirely derivative of the fraud and breach-of-contract claims, *see* Complaint ¶ 158, and fails for the same reasons as these counts.  The entire Complaint should also be dismissed under Rule 12(b)(6).

**II.    BACKGROUND**

Plaintiff's Complaint contains sweeping allegations regarding a "systematic" and "perpetual" "fraudulent scheme" perpetuated by defendants.  Six of the Complaint's first seven paragraphs proclaim the alleged "fraudulent scheme," and the rhetoric only accelerates over the

2

remainder of the Complaint. Plaintiff generally identifies six wholly general categories of "false statements of material facts" in defendants' "patient treatment records and bills," Complaint ¶ 129,[1] and alleges it has been damaged in an amount in excess of $800,000, Complaint ¶ 5(e). This figure is based on the sum of payments allegedly made to defendants of over $494,000.00 on 165 individual claims for PIP benefits, Complaint ¶ 69, and an additional $306,000.00 on 79 bodily injury claims.[2] Complaint ¶ 78. In short, Metropolitan's $800,000 ad damnum figure is based on the allegation that each and every one of the 244 claims identified in the Complaint — an average claim being for $3,160.00 — was fraudulent.

Despite the hyperbole in the Complaint, however, the only remotely specific allegations of fraud have to do with bills for services defendants rendered to 16 patients. Complaint ¶¶ 86-114. This is approximately 7% of the total 244 claims and, using the average claim amount of $3,160.00, suggests that an ad damnum based on these alleged cases of fraud is more like $50,000. Not only is this sum $25,000 below the amount-in-controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332, it is $750,000 below the amount of the ex parte attachment plaintiff received. Although Metropolitan insists that these 16 cases in the Complaint are being provided "by way of example only," *see* Complaint ¶¶ 90, 92-94, 96-98, 100, 102,

---

[1] Plaintiff alleges that Defendants made false/misleading statements in the following six categories: statements "as to the type, existence and extent" of patients symptoms and injuries (Compl., at ¶ 129(a)); statements designed to conceal "exaggerated" diagnoses and treatment rendered that was not "medically reasonable or necessary" based on those diagnoses (Compl. at ¶ 129(b)); statements regarding treatments actually provided to patients (Compl. at ¶ 129(c)); statements as to the "efficacy of the treatments allegedly provided to each patient" and the periodic progress of his/her treatment programs (Compl. at ¶ 129(d)); statements as to "the causal link between the alleged injuries and the motor vehicle accident under which the PIP claim" was made (Compl. at ¶ 129(e)); and statements on patient progress reports that were designed to "frustrate, mislead and hinder" record reviews done by Metropolitan (Compl. at ¶ 129(f)).

[2] These claims may or may not have been submitted directly to the Plaintiff but may have been the result of third party claims.

3

104,³ it provides no factual basis for the inference it intends this Court to draw — namely, that the alleged infirmities in the billing records for 16 patients also exist in the records for the 200+ claims that are not included in the Complaint.

But even for the 16 patients identified in the Complaint, the specifics of Metropolitan's fraud allegation are wholly lacking. The allegedly fraudulent bills and/or medical records are not attached to the Complaint. Nor are they quoted from or even summarized in the Complaint. No date is provided for any bill sent on behalf of the 16 patients; no specific misstatement in any bill or record is identified. Most significantly, there is no allegation that the allegedly fraudulent bills for these 16 patients were, in fact, paid by the plaintiff. Plaintiff's references to its payments of bills are entirely general and cryptic. Complaint ¶¶ 68-69. *See also id.* ¶ 100 ("Defendants routinely billed for this modality as part of the patient's overall treatment").

### III.     ALL COUNTS SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH FED. R. CIV. P. 9(B)

The First Circuit has made it abundantly clear that Rule 9(b) "requires specification of the time, place, and content of an alleged false representation." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996) (*quoting McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980)); *Dileo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ("this means the who, what, when, where, and how: the first paragraph of any newspaper story"). "Mere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and

---

³ Plaintiff submitted anecdotal evidence "by way of example only" of only: ten patients who allegedly received less costly treatments than were billed (Compl., at ¶¶ 86-94), three (new) patients who received treatment for fictitious injuries (Compl., at ¶¶ 95-98), thirteen patients to whom treatments billed were never provide (Compl., at ¶¶ 99-105), three patients for whom false examination findings were made (Compl., at ¶¶ 106-109), three patients who claim Dr. Huynh was not present for their treatment (Compl., at ¶¶ 110-114), three patients whose records were inconsistent with their treatment (Compl., at ¶¶ 115-117) and four sets of patients who received similar treatment (Compl., at ¶¶ 118-119). The patients who are cited as examples for the various kinds of alleged fraudulent practices overlap greatly in each category. Only approximately sixteen different patients are referenced throughout all of Plaintiff's Complaint.

schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." *Doyle*, 103 F.3d at 194 (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985)).

Rule 9(b)'s purposes are to provide adequate notice to defendants of plaintiffs' claims, to discourage "strike suits," to prevent plaintiffs from filing suits merely hoping to uncover relevant evidence during discovery, and to protect the reputations of defendants from meritless claims of fraud. *Doyle*, 103 F.3d at 194. Rule 9(b) applies, moreover, not only to the counts in a complaint that are explicitly denominated as "fraud" claims. The First Circuit has made it clear that Rule 9(b) applies in all cases " in which fraud lies at the core of the action." *Hayduk*, 775 F.2d at 443. Judges in this Circuit have not hesitated to apply Rule 9(b) to all manner of claims that are, in essence, based on allegations of fraud. *See Lucia v. Prospect Street High Income Portfolio, Inc.*, 769 F. Supp. 410, 416-417 (D. Mass. 1991) (Mazzone, J.) (applying Rule 9(b) to negligence claim where "it is clear that fraud, not negligence, lies at the core of the complaint"); *Mosko v. Defilippo*, 1991 WL 191211 (D. Mass. 1991) (Zobel, J.) ("To the extent that the plaintiff's other remaining claims, e.g., negligent misrepresentation and breach of contract, are premised upon fraud, these allegations must also comport with the requirements of Rule 9(b).")(citing *Hayduk*, 775 F.2d at 443-44).

As a threshold matter, there can be no serious dispute that fraud is "at the core" of Metropolitan's Complaint here, even though only Count I is explicitly denominated as a "fraud" claim. The contract, negligence, and Chapter 93A counts are entirely derivative of the fraud allegations. The term "fraudulent scheme" is used in six of the Complaint's first seven paragraphs, and the rhetoric of fraud continues unabated throughout the Complaint. *See* Complaint ¶ 25-40 ("The Scheme"), ¶ 41 ("false . . . diagnosis"), ¶ 44 ("fraudulent treatment plan"), ¶¶ 41-65 (describing the elements of the alleged "fraudulent treatment scheme"), ¶ 66 ("fraudulent records and bills"), ¶ 73 ("fraudulent claims"), ¶ 74 ("fraudulent bills"), ¶ 79("fraudulent treatment"), and ¶ 85 ("fraudulent scheme"). All of these allegations are incorporated by reference into the other three counts, Complaint ¶¶ 136, 142, 155, and there are

no other, non-fraud-based, material facts alleged to support the theories of recovery alleged in these counts. Accordingly, since fraud is "at the core" of the Complaint, Rule 9(b) applies to all counts.

Plaintiff's Complaint falls far short of Rule 9(b)'s requirements. Most obviously, even with respect to the 16 patients whose medical treatment is mentioned, the Complaint fails to allege the "time, place, and content of an alleged false representation." *Doyle*, 103 F.3d at 194. No date or amount is provided for any bill submitted by defendants. No allegedly false statement in any bill or medical record is identified. There is not even any allegation that any bill for the 16 patients was paid. *See Sebago, Inc. v. Beazer East*, 18 F. Supp. 2d 70, 89 (D.Mass. 1998) (reliance element of fraud claim must be alleged with particularity). In sum, the Complaint relies on rhetoric and anecdote instead of particularized factual allegations, and is a textbook example of the type of pleading condemned by the First Circuit in *Hayduk*. In that case, the Court stated that "mere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated. 775 F.2d at 444. Here, as in *Hayduk*, plaintiff substitutes volume, rhetoric, and repetition for particular allegations. Here, as in *Hayduk*, the Complaint should be dismissed.

This Court addressed the applicability of Rule 9(b) to allegations of fraudulent billing in *Gublo v. NovaCare, Inc.*, 62 F. Supp. 2d 347 (D. Mass. 1999). In *Gublo*, a *qui tam* action brought under the False Claims Act, 31 U.S.C. § 3729, the relator alleged that the defendant billed the government for expensive orthotic and prosthetic devices while in fact supplying patients with cheaper devices. *Id.* at 349. As to the orthotic devices, plaintiff identified not only the nature of the over billing but also specifically alleged the payer, date, and practitioner for the over billing. *Id.* at 354. As to the prostetic devices, on the other hand, plaintiff alleged no specific false claims but based its allegations on anecdotal conversations with employees of defendant, observations of third parties, and the defendant's billing forms. *Id.* at 349-50. Accordingly, this Court found the plaintiff's allegations as to the orthotics sufficient but found

the allegations as to the prosthetics overbilling deficient, and dismissed that portion of the claim. *Id.* at 354-355.  The reasoning of *Gublo* applies here, and the Complaint should be dismissed.

**IV.    ALL COUNTS SHOULD ALSO BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER FED. R. CIV. P. 12(B)(6)**

In addition to its infirmities under Rule 9(b), the Complaint also fails to state a claim upon which relief can be granted.  In order to survive a challenge under Rule 12(b)(6), a complaint must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996).  The court must accept as true only the well-pleaded facts in the complaint and need not give deference to unsupported assertions or legal conclusions.  *Abbott v. United States*, 144 F.3d 1, 2 (1st Cir. 1998).  Plaintiff has failed to meet these pleading standards.

    **A.    Plaintiff's Fraud Allegation Fails.**

Plaintiff's fraud claim rests on, at most, cryptic allegations of impropriety with respect to 16 out of 244 patient records for which Spine Care allegedly submitted claims for payments to Metropolitan.  Although the allegations even as to those 16 patients fail under Rule 9(b), they are also deficient under Rule 12(b)(6), as plaintiff does not allege in any form — particular or otherwise — that it paid any of the 16 claims.  It is well stated under Massachusetts law that detrimental reliance is an element of a common law fraud claim.  *E.g., Piantes v. Pepperidge Farm, Inc.*, 875 F. Supp.929, 933 (D. Mass. 1995).  For this reason, Count I must be dismissed pursuant to Rule 12(b)(6).

    **B.    Plaintiff's Breach of Contract Claim Fails.**

Plaintiff's breach of contract claim is based on an alleged "statutory contract" that supposedly provides it with a right of action against defendants. Complaint ¶¶ 17, 136-141. Specifically, Metropolitan alleges that this "contract" is created by operation of the Massachusetts No-Fault statute, M.G.L. c. 90, § 34M, which provides that injured persons who do not timely receive "personal injury protection" ("PIP") benefits mandated thereunder can bring a "contract" action against any insurer withholding payment. *Id.*

Plaintiff's purported contract claim is an unwarranted attempt to turn § 34M on its head. Section 34M allows an injured party or his assignee to submit claims for PIP benefits directly to the automobile insurer. *Id.* at ¶ 3. It also provides a mechanism whereby a PIP claimant can pursue a remedy against an insurer that withholds claimed PIP benefits, despite the lack of "privity" between the injured party and the insurer:

> [i]n any case where benefits due and payable remain unpaid for more than thirty days, any unpaid party shall be deemed a party to a contract with the insurer responsible for payment and shall therefore have a right to commence an action in contract for payment of amounts therein determined to be due in accordance with the provisions of this chapter.

*Id.* at ¶ 4. Nothing in § 34M, however, provides a cause of action <u>for an insurer</u> against a licensed practitioner for breach of contract. As countless cases have recognized, the purpose of § 34M is to provide injured parties with an efficient means of receiving compensation for their most pressing needs. *E.g.*, *Fascione v. CNA Ins. Cos.,* 435 Mass. 88, 94 (2001). The rearrangement of commercial relationships suggested by Metropolitan is well beyond the statute's plain purpose.[4]

---

[4] The insurer is not powerless, of course, when confronted with a demand for PIP benefits. In order to show that a demand is not due and payable, the insurer may have it reviewed by a licensed practitioner, and if the licensed practitioner finds that the bill is inflated then the insurer need only pay the amount the licensed practitioner finds reasonable. M.G.L. c. 90 § 34M.

8

Even if Metropolitan's fanciful reading of § 34M could somehow be harmonized with the statute's language and purpose, its contract claim fails for the additional reason that the Complaint does not allege the necessary elements of such a claim. Those elements are: (1) an agreement supported by valid consideration; (2) that plaintiff was ready, willing, and able to perform its obligations; (3) that defendant's breach prevented plaintiff from performing; and (4) that plaintiffs were damaged. *Doyle v. Hasbro*, 103 F.3d at 194 (citing *Siganella v. City of Boston*, 342 Mass. 385, 389 (1961)). As the First Circuit has stated, it is "essential to state with 'substantial certainty' the facts showing the existence of the contract and the legal effect thereof." *Id.* Here, as in *Doyle*, the Complaint fails to specifically allege the nature of any contract, the formation of any such contract, the terms of any such contract, defendant's willingness to perform the contract, or the damages attributable to any breach . *Doyle,* 103 F.3d at 195. Here, as in *Doyle*, the contract claim must be dismissed.

### C.   Plaintiff's Negligence Claim Fails

All of the allegations germane to Count III's negligence theory are based on "applicable Massachusetts regulations," Complaint ¶¶ 142-154, that are nowhere identified in the Complaint. Despite these mysterious references, there appear among the mismash of these paragraphs to be three strands to Metropolitan's negligence theory. First, Metropolitan seems to be suggesting that defendants breached their duty to their patients. *See* Complaint ¶¶ 146-147 (alleging breach of duty to provide certain treatments only when licensed staff were on premises); ¶¶ 148-149 (alleging breach of duty not to delegate decisions regarding a patient's treatment plan to unlicensed staff). Second, Metropolitan also appears to be alleging that defendants breached a duty mandated by "applicable Massachusetts regulations," nowhere identified, to "not to engage

in excessive treatment or excessive billing in the cause of its practice." Complaint ¶ 150.[5] Neither theory of negligence, no matter how generously the Complaint is construed, is sufficient to state a claim under Rule 12(b)(6), as neither theory sufficiently alleges that defendants owed a duty to plaintiff. *See Delaney v. Reynolds*, 63 Mass. App. Ct. 239 (2005) (citing *Glidden v. Maglio*, 430 Mass. 694, 696 (2000)) (existence of a legal duty owed to plaintiff is an element of any negligence claim).

First, to the extent Count III is based on allegations akin to "medical malpractice," the claim fails. It is hornbook law that a medical malpractice plaintiff must demonstrate the existence of a doctor-patient relationship, that the doctor's performance did not conform to good medical practice, and that the plaintiff was damaged as a result. *Kapp v. Ballantine*, 380 Mass. 186 (1980); *Perez v. Bay State Ambulance & Hosp. Rental Serv. Inc.*, 413 Mass. 670 (1992). Plaintiff also must show that the defendant personally owed plaintiff a duty of care, which was breached. *Santos v. Kim*, 429 Mass. 130, 138 (1999). Plainly, plaintiff has not alleged a doctor-patient relationship between it and defendants, and any negligence claim based on such "medical malpractice" allegations must fail.[6]

---

[5] As a third possibility, there is a single fleeting allegation in ¶ 153 to "negligent supervision of [defendants] employees." This theory, to the entent it is sufficiently alleged, must be dismissed because there is no attempt to allege the requisite elements of such a claim. *See Moylan v. Stop and Shop Companies, Inc.*, 2001 WL 262661 at *2 (Mass. Super. March 14, 2000) (elements of negligent supervision claim include that employee's alleged misconduct was foreseeable to defendant).

[6] Additionally, in Massachusetts, medical malpractice claims must, in the first instance, be brought before a medical malpractice tribunal. Pursuant to M.G.L. c. 231, § 60B, "[e]very action for malpractice, error or mistake against a provider of health care shall be heard by a tribunal…". M.G.L. c.231, § 60B. A health care provider is defined by the statute to include "a person, corporation, facility or institution licensed by the commonwealth to provide health care or professional services as a … chiropractor … or agent thereof acting in the course and scope of his employment." M.G.L. c.231, § 60B. Because Dr. Huynh and Spine Care are both health care providers within the definition of Section 60B, any treatment related claims against them must first be brought before the medical malpractice tribunal and, therefore, are improperly before this Court and must be dismissed. *Little v. Rosenthal*, 376 Mass. 573, 576 (1978) (holding that "all treatment-related claims [against a health care provider] were meant to be referred to a malpractice tribunal").

Second, the Complaint also fails to the extent it is premised on a theory of "negligent billing." Again, the defect is the failure to allege facts demonstrating a duty owed to the plaintiff. Plaintiff bases this portion of its claim entirely on the conclusory allegation that defendants have a duty under "applicable Massachusetts regulations…not to engage in excessive treatment or billing in the course of its [sic] practice." Complaint at ¶ 150. The "applicable regulation" that is the apparent source of this "duty" is nowhere identified in the Complaint, however. This wholly generalized reference to an "applicable regulation" is precisely the sort of "bald assertion," or "unsubstantiated conclusion" that need not be credited in considering a motion to dismiss under Rule 12(b)(6). *Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1 (D. Mass. 2004) (Saris, J.). In addition, in as much as there is no freestanding cause of action for "negligent billing," plaintiff must allege the necessary elements of "negligent misrepresentation," which it plainly has not done. The elements of such a claim are that the defendant (1) in the course of business, (2) supplie[d] false information for the guidance of others, (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others, (5) by their justifiable reliance on the information, and 6) with failure to exercise reasonable care or competence in obtaining or communicating the information." *Savers Property & Cas. Ins. Co., v. Admiral Ins. Agency*, 61 Mass. App. Ct. 158,169 (1998). At a minimum, element (4) in this list has not been alleged. Count IV, which alleges a violation of Chapter 93A, is entirely derivative of the Count I fraud and Count II Breach-of-Contract claims, *see* Complaint ¶ 158, and is deficient for the same reasons as these counts. Although paragraph 158 also alleges that defendants engaged in "intentional interference with an advantageous business relationship," although this theory of recovery is not mentioned anywhere else in the Complaint and the allegations necessary to support such a claim are not contained in the Complaint.

In sum, plaintiff's negligence allegations are deficient, and this Count should be dismissed as well.

**V.    CONCLUSION**

For the reasons set forth above, defendants respectfully request that the Complaint be dismissed in its entirety with prejudice.

Respectfully submitted,

          HAI NHU HUYNH and
          SPINE CARE AND THERAPY, INC.,

          By their attorneys,

          _/s/_James C. Rehnquist_____
          James C. Rehnquist (BBO# 552602)
          GOODWIN PROCTER LLP
          Exchange Place
          Boston, MA 02109
          (617) 570-1000

          __/s/ Andrew D.Nebensahl_____
          Andrew D. Nebenzahl (BBO# 368065)
          NEBENZAHL │ DuBOSQUE, LLP
          One Post Office Square
          Sharon, MA  02067
          (781) 784-2000

September 16, 2005
LIBA/1577944.3