UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05 11287 RGS

METROPOLITAN PROPERTY AND            )
CASUALTY INSURANCE COMPANY,          )
Plaintiff,                           )
                                     )
v.                                   )
                                     )
HAI NHU HUYNH and                    )
SPINE CARE AND THERAPY, INC.,        )
Defendants.                          )

### PLAINTIFF, METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY'S OPPOSITION TO DEFENDANTS' MOTION TO DISSOLVE EX PARTE ATTACHMENTS

The Plaintiff, Metropolitan Property and Casualty Insurance Company ("Metropolitan submits this Opposition to the Defendants' Motion to Dissolve *Ex Parte* Attachments.

**I.   INTRODUCTION**

The Defendants have failed to meet their initial burden of introducing sufficient evide to challenge the findings of this Court which properly allowed Metropolitan's *ex parte* motion for attachment and trustee process. The Defendants rely not only upon two affidavits, but als attempt to rely on a memorandum of law in support of a motion to dismiss, which has not yet been opposed by the Plaintiff, nor considered by the Court. This attempt to somehow argue t Complaint's dismissal at this time is inappropriate.

Defendant, Hai Nhu Huynh's ("Dr. Huynh") affidavit fails to offer any facts to counte any of the factual allegations in Metropolitan's Complaint and factual assertions in SIU Investigator, Mark Huard's affidavit. As such, Dr. Huynh's affidavit fails to refute the Court finding that Metropolitan will succeed on the merits and recover an amount in excess of the

1

amount attached. See Aetna Casualty and Surety Co. v. Rodco Autobody, 138 F.R.D. 328, 33 332 (D.Mass. 1991); Mass.R.Civ.P. 4.1(c) and 4.2(c). Indeed, Dr. Huynh's silence on the fact assertions in Mr. Huard's affidavit is telling and can be properly interpreted as a admission. Having no alternative to either committing perjury or simply ignoring the facts in Mr. Huard's affidavit, Dr. Huynh must attempt to conjure sympathy from this Court and provide irrelevant personal background information and his residential history. This is insufficient to dissolve th attachments.

The second affidavit is that of Daniel J. Reida's ("Dr. Reida"). This affidavit also fail satisfy the Defendants' burden in challenging the *ex parte* attachments, let alone warranting th dissolution of same. Dr. Reida's affidavit is premised upon a review of the Defendants' *own* medical notes and billing records, as well as a discussion with Dr. Huynh regarding each of th particular patient records examined.

In reliance on the Defendant's own representations, against whom allegations of insurance fraud are pending, Dr. Reida somehow concluded that the treatment rendered was reasonable and necessary and there was no evidence of fraud. This conclusion is of no surpris in light of the fact that although a careful review of all bills and records would have revealed of the fraudulent scheme, the depth of the scheme is only uncovered when all the evidence is analyzed. Something Dr. Reida clearly did not review. Metropolitan has clearly and with specificity alleged, *inter alia* that the Defendants' medical records and bills have little, if any, relationship to the actual injuries sustained by the patients and that certain treatment modalitie billed for by the Defendant were never implemented. While Dr. Reida primarily relies upon I Huynh and the suspect medical records and bills, Metropolitan relies, in part, upon the independent under oath testimony of the Defendants' own patients who directly refute the

validity of the medical records and reports examined by Dr. Reida. See Complaint, ¶¶ 90, 96 98, 100, 102, 104, 107-109, 112-117.

The Defendants' last catch all effort to satisfy its burden was to simply attach a copy of their Memorandum in Support of Defendants' Motion to Dismiss Pursuant to Rule 9(b) and 12(b)(6), and literally "cut and paste" a portion of its Motion to Dismiss into the body of the Motion to Dissolve. See Memorandum in Support of the Defendants' Motion to Dismiss, pp 2; See Memorandum in Support of Defendants' Motion to Dissolve *Ex Parte* Attachments, pp.11-12. Metropolitan intends to oppose the Defendants' meritless assertions by filing a for Opposition to the Defendants' Motion to Dismiss in accordance with the time limits prescribe by Local Rule 7.1(B)(2) and appearing, if necessary, for a hearing *on that particular motion*. Nonetheless, it is clear that the Defendants' tenuous arguments, based largely on alleged procedural defects, fails to counter the Court's finding that Metropolitan is likely to succeed on the merits of its claims, and that it will recover a judgment in excess of the $800,000.00 attachment granted by the Court. As such, the Defendants' Motion must fail.

Even if it can be found that the Defendants have somehow met their initial burden, the motion must still fail, as Metropolitan clearly meets any subsequent burden having established that it is likely to succeed on the merits of its claims against the Defendant and will recover a judgment in excess of the amount attached. See Mass.R.Civ.P. 4.1(c) and 4.2(c).

## II. LEGAL ANALYSIS

### A. Legal Standard

#### 1. Granting an Attachment

---

[1] In what can only be considered tactical gamesmanship, the Defendants have bootstrapped their Motion to Disr to their Motion to Dissolve *Ex Parte* Attachments. This disingenuous tactic is an attempt to force Metropolitan t simultaneously argue two separate and distinguishable motions without the opportunity to fully and adequately present an opposition to the former motion within the time period proscribed by Rule 7.1(B)(2).

Rule 64 of the Federal Rules of Civil Procedure governs the seizure of property throug[h] remedies which "are available under the circumstances and in the manner provided by the law [of] the state in which the district court is held..." Fed.R.Civ.P. 64. In Massachusetts, the seizure [of] property is governed by M.G.L. c. 223, §§42-83 (attachment) and c. 246 (trustee process), wh[ich] are implemented through Mass.R.Civ.P. 4.1 and 4.2.

Massachusetts law provides for approval of an attachment *ex parte* only if the court fir[st] that "there is a reasonable likelihood that the plaintiff will recover a judgment equal to or grea[ter] than the amount of trustee process over and above any liability insurance known or reasonabl[y] believed to be available, and at least one of the following conditions concerning real property [is] met:

> (i) the person of the defendant is not subject to the jurisdiction of the court in the action, or (ii) there is a clear danger that the defendant if notified in advance of attachment of the property will convey it, remove it from the state or will conceal it, or (iii) there is immediate danger that the defendant will damage or destroy the property to be attached.

Mass.R.Civ.P. 4.1(f).

Approval of an attachment through trustee process *ex parte*, requires that the court fin[d] that "there is a reasonable likelihood that the plaintiff will recover a judgment equal to or grea[ter] than the amount of trustee process over and above any liability insurance known or reasonabl[y] believed to be available," and at least one of the following conditions are met:

> (i) the person of the defendant is not subject to the jurisdiction of the court in the action, or (ii) there is a clear danger that the defendant if notified in advance of the attachment on trustee process will withdraw the goods or credits from the hands and possession of the trustee and remove them from the state or will conceal them, or (iii) there is immediate danger that the defendant will dissipate the credits, or damage or destroy the goods to be attached on trustee process.

4

Mass.R.Civ.P. 4.2(g).

Applying Massachusetts law, the District Court of Massachusetts has held that the central issue to be considered by the court is whether the plaintiff is "likely to prevail on the merits and obtain damages in the necessary amount." Rodco, 138 F.R.D. at 332, (quoting (Anderson Foreign Motors Corp. v. New England Toyota Distributor, Inc., 475 F.Supp. 973, 978 (D.Mass. 1979)). See Boston Trading Group, Inc. v. Carter, 561 F.Supp. 1175, 1176 (D.Mass. 1983)(a showing of a 'reasonable likelihood' of success on the merits is required for the issuance of a writ of attachment or of trustee process).

It must be noted that "Massachusetts courts have not determined the exact evidentiary standard (e.g. clear and convincing or preponderance of the evidence) for a 'likelihood' of a certain recovery to be found. Sheehan v. Netversant-New England, Inc., 345 F.Supp.2d 130, 2 (D.Mass. 2004), citing (Montague Corp. v. Simon Worldwide Inc., 2001 WL 1226854 (Mass.Super.)(Lauriat, J.); See also Rodco, 138 F.R.D. at 332 ("Mass.R.Civ.P. 4.1 and 4.2 are silent as to the quality of evidence or quantum of proof required to obtain court approval of a attachment"). However, "the party seeking an attachment need not be certain of prevailing." Montague, 2001 WL 1226854 *2.

Since both a writ of attachment and trustee process were granted by this Honorable Court, a necessary conclusion can be drawn that this Court found that: (1) the plaintiff is likely to prevail on the merits; and, (2) the plaintiff is likely to recover damages in excess of the amount attached and available through insurance. Indeed, when this Court granted the attachment *ex parte*, it can further be concluded that the Court found that at least one of the conditions justifying an *ex parte* attachment had been met in addition to the basic attachment requirement

See Mass.R.Civ.P. 4.1(f) and 4.2(h). No facts or other evidence have been proffered by the Defendants to contest the findings of this Court.

### 2. Dissolving an Attachment

Should a defendant move to dissolve an attachment granted *ex parte*, "[t]he initial burd[en] at the hearing...rests upon the defendant to introduce sufficient evidence *by testimony or affidavit* to challenge any finding upon which the issuance of the *ex parte* order rested." Rodc[o], 138 F.R.D. at 332 (emphasis added); Montague, 2001 WL 1226854. Only after the defendant has met this burden, does the burden then shift to the plaintiff to establish the basis for the attachment "as if the plaintiff had sought a hearing on the motion rather than [proceeding] in [an] *ex parte* fashion." Id. Therefore, Metropolitan is under no burden to re-establish the basis for the relief sought and obtained *ex parte*. While certain courts have characterized this burden as "heavy," Montague, 2001 WL 1226854, the quality and quantum of evidence necessary to me[et] this burden remains to be decided on a case by case basis. See Rodco, 138 F.R.D. at 332; Sheehan, 345 F.Supp.2d at 132.

Regardless of the standard of evidence used, the burden requires the Plaintiff to reestablish the basis for attachment, as set forth in Mass.R.Civ.P. 4.1(c) and 4.2(c). The Defendants' assertion that Metropolitan must again fulfill the *ex parte* burdens set forth in Mass.R.Civ.P. 4.1(f) and 4.2(g) is erroneous.

### B. Defendants Have Failed to Meet Their Burden of Proof in Seeking to Dissolve the *Ex Parte* Attachments

The Defendants' Motion, along with its supporting memorandum and affidavits, fail t[o] meet the initial burden placed upon a party who seeks the dissolution of an *ex parte* attachme[nt]. Not only do the Defendants fail to meet their burden, but they make no effort to counter or otherwise address the only issues before this Court: (1) is Metropolitan likely to succeed on t[he]

merits of its claims, and (2) is Metropolitan likely to recover a judgment in excess of the amount attached or available through insurance. Rodco, 138 F.R.D. at 332.

      **1.**    **Defendants Fail to Counter Metropolitan's Likelihood of Success on the Merits**

Dr. Huynh's affidavit is primarily an anecdotal account of his cultural, professional, and economic background. Rather than directly refute the specific and particular allegations contained in Metropolitan's Complaint and the factual allegations in Special Investigations Unit Investigator, Mark Huard's affidavits, Dr. Huynh focuses on information largely irrelevant to the issues presented before the Court in an attempt to divert attention away from his fraudulent and illicit conduct. Dr. Huynh also attempts to convince this Court that he is not likely to flee the Commonwealth. Even if Dr. Huynh was able to establish that there no clear danger of flight or dissipation of assets, the issue is moot, as the *only* issues before the Court at this time are whether Metropolitan is likely to succeed on the merits, and whether Metropolitan is likely to recover a judgment in excess of the amount attached.

Dr. Huynh's affidavit does not and cannot refute the established fact that Metropolitan is likely to succeed on the merits of its claim. In summary, Metropolitan has specifically and particularly alleged that Defendants, from January 2001 to the present, have engaged in a detailed and widespread scheme to defraud Metropolitan (and likely other insurers) by submitting false and misleading medical records and bills in order wrongfully collect insurance proceeds pursuant to M.G.L. c. 90, §34M and the insurance policy contracts. See Complaint, ¶¶ 25-85. Metropolitan has plead multiple examples of the type and nature of the Defendants' fraudulent activities which include, but are not limited to;

    (1)    making false and/or exaggerated objective examination findings allowing the Defendants to wrongfully diagnose extensive soft-tissue injuries, thereby

7

allowing the Defendants to prescribe excessive treatment plans (Complaint, ¶ 36-37);

(2) diagnosing injuries that did not exist (Complaint, ¶¶ 95-98, 106-109);

(3) wrongfully providing supportive modalities to patients while no licensed chiropractor was on the premises, in violation of 233 CMR 4.02, and then bil[ling] Metropolitan for these improper treatments (Complaint, ¶¶ 50-52);

(4) reporting progress of individual patients wholly inconsistent with the unique actual progress reported by the individual patients (Complaint, ¶ 62);

(5) providing the same or substantially similar treatment to patients involved in the same motor vehicle accident, regardless of the patient's height, weight, alleged injuries, current health, or other individual factors (Complaint, ¶¶ 64-65);

(6) hindering Metropolitan's ability to obtain Independent Medical Examinations the Defendants patients (Complaint, ¶ 73);

(7) improperly ensuring that every patient treating with the Defendants and entitled to insurance benefits from Metropolitan surpasses the $2,000.00 threshold established by M.G.L. c. 231, §6D, necessary to make a bodily injury claim fo[r] pain and suffering (Complaint, ¶¶ 34, 63, 76);

(8) improperly arranging meetings between attorneys, patients, and Dr. Huynh in violation of M.G.L. c. 221, §44A (Complaint, ¶¶ 30-32); and,

(9) billing Metropolitan for treatments never provided to patients (Complaint, ¶¶ 105);

Not only did Metropolitan allege the particular types of fraud perpetrated by the Defendants, but it also alleged specific examples of each particular type of fraud. See

Complaint, ¶¶ 86-126; See also United States ex rel. Franklin v. Parke-Davis, 147 F.Supp.2d , 47 (D.Mass. 2001)(strict application of Rule 9(b) requirements have been relaxed in certain circumstances, particularly where the fraudulent scheme involves transactions that occur ove long period of time, and pleading the specifics with regard to every instance of fraudulent conduct may be impractical.); In re Cardiac Devices Qui Tam Litigation, 221 F.R.D. 318, 33 (D.Conn. 2004)(courts have relaxed the pleading requirements of Rule 9(b) in "cases involvi complex or extensive schemes of fraud."). Furthermore, these specific allegations, as well a: e information and facts supporting them were iterated in Mr. Huard's affidavits.

Nowhere within his affidavit does Dr. Huynh refute the allegations made supporting Metropolitan's various causes of action and requests for attachment. Dr. Huynh does not anc cannot offer his practice standards, the procedures used to examine a patient, or the standards implemented by the Spine Care and Therapy staff in administering treatment to patients. Dr. Huynh does not counter or explain his use of improper "CPT" codes, a fact that is irrefutable based on a review of the Defendants' own records. See Complaint, ¶¶ 89-90. Dr. Huynh doe not counter or refute his own patients' under oath testimony where they specifically deny receiving certain treatment modalities that the Defendants then billed to Metropolitan. See Complaint, ¶¶ 99-105. Dr. Huynh does not counter or refute the testimony of several, specifically identified patients, who deny they were injured in the manner reported by the Defendants. See Complaint, ¶¶ 96-98. Furthermore, Dr. Huynh does not even attempt to refu or counter patient testimony stating that Dr. Huynh personally arranged meetings between the patient, a local attorney, and Dr. Huynh, *on Spine Care premises*, in direct violation of M.G.L c.223,§ 44A. See Complaint, ¶¶ 121-126.

Since Dr. Huynh's affidavit fails to satisfy the Defendants' burden, as set forth in Mass.R.Civ. 4.1(c) and 4.2(c), and Massachusetts law, the analysis must then turn to whether affidavit of Dr. Reida is sufficient to satisfy their burden of proof and warrant the dissolution of the attachments.

Dr. Reida's affidavit does not contain any factual statements defeating this Court's conclusion that Metropolitan had shown the likelihood of success on the merits. Through Dr. Reida's affidavit, the Defendants have presented an "expert" opinion establishing the veracity their medical records and bills associated with a variety of patients. Upon closer inspection, Dr. Reida's affidavit and "expert" opinion fail to take the logical and necessary steps in order to proffer an unbiased and independent review of the Defendants' medical records as is pertinen the issues specifically before the Court.

Dr. Reida's affidavit concludes, "with a reasonable degree of medical certainty," that each patient file reviewed establishes that: (1) "a comprehensive examination" was performed each patient, thereby justifying the treatment proscribed by Dr. Huynh, (2) there is a clinical rationale for chiropractic treatment in each case, (3) there is a clinical rationale for supportive modalities, (4) Dr. Huynh "justified the on-going care of these patients as articulated within h initial examination and subsequent evaluations, (5) the progress of each patient was consisten with the progress to be expected with the types of injuries to be diagnosed, (6) each patient w discharged within a clinically reasonable time, and (7) the materials presented do not show evidence of fraud on the part of the Defendants. See Reida Affidavit, ¶¶ 4-7.

Based on the substance of Dr. Reida's affidavit, it is clear that the "facts" and circumstances relied upon by Dr. Reida to support his expert opinions were simply the medic records and bills of the Defendants, along with the statements made by Dr. Huynh. No

independent examinations and/or statements of patients were secured and Dr. Reida was silent to the undeniable violations of numerous CPT Codes, The Code of Massachusetts Regulations and Massachusetts General Laws. Such an "expert" analysis presupposes (wrongly, as it turns out) that the information within the Defendants' medical records and bills truthfully and accurately depicts the injuries actually sustained by the patient, the treatments actually provided to the patients and by Dr. Huynh, the Defendants' adherence to the Massachusetts Chiropractic Rules of Professional Conduct, and the proper CPT code has been billed for the actual treatment provided, if any. Metropolitan's Complaint and Mark Huard's affidavits specifically counter such assumptions. See Complaint, ¶¶ 86-119. Dr. Reida's affidavit offers no quantum of proof that these standards were adhered to, nor does he even address these standards. By way of example only, the use of new patient CPT codes used multiple times for repeat patients, was even addressed by Dr. Reida nor did he comment on how this improper conduct does not support Metropolitan's likelihood of success in this case.

Expert testimony based on such unwarranted assumptions should be afforded no weight by the Court. See United States v. Honolulu Plantation Co., 182 F.2d 172, 178 (9th Cir. 1950)("Where unwarranted theories of law or assumptions of fact guide the expert and are used as a basis for value by the Court, the evaluation will be set aside and the cause remanded for new findings"), cert. denied, 340 U.S. 820 (1950); Logsdon v. Baker, 366 F.Supp. 332, 338 (D.D.C. 1973)(opinion testimony of experts must be excluded if based upon facts that are doubtful or controversy), vacated on other grounds, 517 F.2d 174 (D.C. Cir. 1975); U.S. v. 319.88 Acres Land, More or Less, Situate in Clark County, Nev., 498 F.Supp. 763, (D.C.Nev. 1980)(opinion evidence is to be considered incompetent if based upon erroneous assumptions of fact or law).

As such, Metropolitan intends to secure testimony from Dr. Reida at the hearing regarding the basis for his various expert opinions. See Mass.R.Civ.P. 4.1(i) and 4.2(i)(both rules permitting parties to call witnesses, including the opposing party). As Dr. Reida's affida is based entirely upon false and inappropriate factual assumptions, it fails to satisfy the Defendants' burden of countering the likelihood that Metropolitan will succeed on the merits.

With no affidavits or other testimony capable of satisfying their burden, the Defendan are forced to rely upon entirely legal arguments that Metropolitan's Complaint fails to meet th pleading standards set forth in Fed.R.Civ.P. 9(b) and 12(b)(6). As stated previously, Metropolitan intends to thoroughly oppose the Defendants' arguments—more appropriately s forth in its Motion to Dismiss—by filing an opposition within the time period set forth by Loc Rule 7.1(B)(2) and at a hearing, should the Court deem it necessary.

Notwithstanding the Defendants' repetition of the arguments made in this motion to dismiss, the Defendants Motion to Dissolve the *Ex Parte* Attachments must still fail because t Defendants have not met their initial burden. The Defendants note that the "Court allowed th [*ex parte*] motions by marginal notation on the same day they were filed, June 20." Memorandum in Support of Defendants' Motion to Dissolve *Ex Parte* Attachments, p. 4 ("Defendants' Memorandum"). The Defendants' argument somehow suggests that the Court merely glossed over Metropolitan's *ex parte* motions. However, the allowance of these motio some four months ago, necessarily required the court to have found that Metropolitan, throug Mark Huard's affidavit and the Complaint, satisfied each and every element required in order pursue an *ex parte* attachment, including the finding that Metropolitan was likely to succeed o the merits of its claims. Nothing put forth by the Defendant has created any question or doubt that Metropolitan is likely to succeed on the merits of its claims.

Since the Defendants are unable to controvert the actual facts and allegations proffere by Metropolitan, in compliance with clearly established Massachusetts law, the Court's origi findings must stand. See Rodco, 138 F.R.D. at 332 (the burden remains with the defendant u it introduces sufficient evidence to challenge the initial order of the *ex parte* attachment). Th substance of the Defendants' motion must be rooted in evidence and go beyond legal argume focused on the style and structure of Metropolitan's Complaint.

    **2.    Defendants Fail to Counter Metropolitan's Likelihood of Obtainin Judgment Greater Than the Amount of Attachment**

The Defendants' motion fails to sufficiently refute or counter Metropolitan's likeliho of obtaining a judgment greater than the amount attached. As stated previously, Metropolita has alleged that the Defendants have engaged in a scheme to defraud Metropolitan since 200 Metropolitan has paid the Defendants in excess of $494,000.00, relating to approximately 16 Personal Injury Protection ("PIP") benefits claims. See Complaint, ¶ 69. Metropolitan has p at least an additional $306,000.00 in bodily injury benefits relating to 79 bodily injury claims directly flowing from the Defendants' fraudulent conduct. See Complaint, ¶ 78. This $800,000.00 total is a conservative figure which does not yet include the costs incurred by Metropolitan investigating each individual claim. While Dr. Huynh's affidavit asserts that Metropolitan has only paid $1,079.75 regarding the "sixteen patients listed...," Dr. Huynh's affidavit does not refute or controvert Metropolitan's assertions that the Defendants have received $494,000.00 in PIP payments from Metropolitan. The Defendants' argument that th Plaintiff failed to establish or enumerate the amounts paid by Metropolitan to Dr. Huynh imp that counsel for Metropolitan has somehow ignored the obligations under Mass.R.Civ.P. Rul

It is Metropolitan's position that it has sufficiently established it is likely to succeed o the merits of its claims, as evidenced by the Court's original allowance of the *ex parte* motio

13

Metropolitan has particularly plead the total amount of damages sustained through its payme[nt] [o]f fraudulent PIP payments to the Defendants, as well as bodily injury payments induced by the Defendants' fraudulent medical bills and records. While not required to plead its damages beyond what it has, Metropolitan is prepared to provide the Defendants with a Computation [of] Damages pursuant to Fed.R.Civ.P. 26(a)(1)(C). Notwithstanding, the detailed computation o[f] how Metropolitan's total damages relates to each individual claim between 2001 and the pres[ent] is not necessary in order to determine whether Metropolitan is likely to obtain a judgment in excess of the amount attached.

### C. The Defendants Have Not Sufficiently Established the Existence of a Properly Designated "Payroll" Account

Through Dr. Huynh's affidavit, the Defendants' have alleged that a bank account at Sovereign Bank, a designated Trustee, is the designated payroll account of Spine Care and Therapy. See Huynh Affidavit, ¶ 25. Massachusetts law provides an exemption from attachment on trustee process for bank accounts that are designated as payroll accounts. M.G[.L.] c. 246, §20 ("…any moneys of the defendant deposited in any account designated as a payrol[l] account shall not be subject to attachment hereunder"). However, this statute also provides t[hat] any defendant, including the president and/or treasurer of a defendant corporation, who depo[sits] money into a payroll account in order to evade attachment on trustee process, may be punish[ed] to include a fine and/or imprisonment. Id.

The United States Bankruptcy Court for the District of Massachusetts, in specifically discussing M.G.L. c. 246, recognized the Massachusetts' Legislature's intent to establish the "special character" of a payroll account. In re Saugus General Hospital, Inc. v. Saugus Bank [&] Trust Co., 7 B.R. 347, 354 (Bankr. D.Mass. 1980). In holding that a bank did not have the ri[ght] to "set off" against a checking account designated by the debtor as a payroll account, the Cou[rt] [i]n

14

Saugus went to great lengths to discuss the steps taken by the debtor in distinguishing its payr

account from its general account:

> The [debtor's] payroll account was used exclusively for the payment of payroll checks which bore specific designations "Payroll Account" and "Payroll Check" and were a different size and color than General Account checks. A separate corporate resolution was filed authorizing different individuals to sign payroll checks than general account checks. Additionally all monies deposited in the Payroll Account were drawn on checks from the General Account in an amount equal to the weekly payroll which normally was expected to result in a zero balance in the Payroll Account after employees cashed their checks. The statements for the payroll account were issued separately by the Bank at a rate twice as frequent as those issued for the general account.

Id. at 349.

Despite Dr. Huynh's personal assertions, The Defendants have proffered no independ

evidence or proof that Sovereign Account No. 649000101102 has been designated as a payro

account or is separate from Spine Care and Therapy's general operating account. The

Defendants have not referred to any corporate resolution authorizing different individuals to

payroll checks from general account checks. Nor do the defendants produce any evidence, su

as a single bank statement or cancelled check, that establishes that this account has been

specifically designated as a "payroll account." In fact, an inspection of the Metropolitan che

issued to the Defendants between 2001 and 2004, indicates that payments made in conjunctio

accounts receivable, with no relation to payroll, were deposited into this particular Sovereign

Bank account.

Due to the Defendants' failure to produce a shred of objective evidence establishing

Sovereign Bank Account No. 649000101102 as a payroll account, Metropolitan respectfully

requests this Honorable Court to deny the Defendants' claim to exemption pursuant to M.G.L 246, §20, thereby maintaining the attachment previously granted.

### III.  CONCLUSION

Based on the foregoing analysis, Metropolitan respectfully requests that this Honorabl Court deny the Defendants' Motion to Dissolve *Ex Parte* Attachments.

Respectfully submitted,
By the Plaintiff,
Metropolitan Property and Casualty
Insurance Company,
By its attorneys,

Glenda H. Ganem, Esq.
BBO# 564374
Clayton R. Henderson, Esq.
BBO# 659532
McGovern & Ganem, P.C.
21 Merchants Row, 4th Floor
Boston, MA 02451
(617) 723-1444

Date: 9/23/05

### CERTIFICATE OF SERVICE

I, Clayton R. Henderson, attorney for the Plaintiff, Metropolitan Property and Casualty Insurance Company, hereby certify that I have this day delivered, via first class mail, postage prepaid, a copy of the within document direct to:

Andrew Nebenzahl, Esq.
Nebenzahl DuBosque, LLP
On Post Office Square
Sharon, MA 01950

James C. Rehnquist, Esq.
Goodwin Procter
Exchange Place
Boston, MA 02109

**Signed under the pains and penalties of perjury this 23rd day of September, 200**

Clayton R. Henderson, Esq.