UNITED STATES DISTRICT COURT OFFICE
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05 11287 RGS

METROPOLITAN PROPERTY AND          )
CASUALTY INSURANCE COMPANY,         )
Plaintiff,                                               )
                                                              )
v.                                                          )
                                                              )
HAI NHU HUYNH and                         )
SPINE CARE AND THERAPY, INC.,      )
Defendants.                                          )

## PLAINTIFF, METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY'S OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS

The Plaintiff, Metropolitan Property and Casualty Insurance Company ("Metropolitan")

submits this Opposition to the Defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 9(b) and

12(b)(6).

## I.     INTRODUCTION

Metropolitan's Complaint fulfills the specificity requirements of Fed.R.Civ.P. 9(b) and

fully pleads its four causes of action, thereby entitling it to relief. In keeping with the spirit and

edicts of Fed.R.Civ.P. 8(a), Metropolitan's Complaint clearly and succinctly describes the

Defendants' complex and lengthy scheme to defraud Metropolitan. At the same time, the

Complaint comports with the requirements of Rule 9(b) by providing the Defendants with

specific and particularized allegations regarding: (1) the timing of their fraudulent conduct; (2)

the location of the fraudulent conduct; (3) the specific methods used by the Defendants to

perpetrate their overall scheme to defraud; and, (4) damages sustained by Metropolitan as a

result of the Defendants' fraudulent conduct. Structuring the Complaint in this manner enabled

Metropolitan to sufficiently place the Defendants on notice of the alleged misconduct, without

having to resort to "fact pleading." See United States ex rel. Franklin v. Park-Davis, 147
F.Supp.2d 39, 47 (D.Mass. 2001); Kaufman v. Magid, 539 F.Supp. 1088, 1092-1093 (D.Mass.
1982); See also Liberty Mut. Ins. Co. v. Diamante, 138 F.Supp.2d 47, 49, n. 1 (2001)(noting that
the plaintiffs' 176-page amended complaint alleging the defendants' complex scheme to defraud
was "far from a 'short and plain statement of the claim showing that the pleader is entitled to
relief' as envisioned by Rule 8, Fed.R.Civ.P.").

Not only does Metropolitan's Complaint plead its allegations with specificity, but it a so
pleads each element of every cause of action, thereby entitling it to relief and, thus, the
Defendants' Motion to Dismiss must fail.

## II.    SUMMARY OF THE COMPLAINT

Given the comprehensive and complex nature of the Defendants' scheme to defraud, it is
necessary for Metropolitan, as a preliminary matter, to delineate the parameters of the fraudulent
scheme through clear and succinct allegations. Accordingly, at the outset, Metropolitan's
Complaint describes the statutory framework governing the relationship between insurance
carriers and healthcare providers within the Massachusetts No-Fault system. See Complaint, ¶¶
14-23. This information is critical to the understanding of how the Defendants' wrongful
activities enable them to knowingly and fraudulently submit Personal Injury Protection ("PIP")
claims and obtain payment of PIP proceeds, while at the same time concealing their malfeasance
under the statutory framework's veil of legitimacy. Id., at ¶ 24.

With the statutory framework established, Metropolitan's Complaint next addresses the
initial meetings between the Defendants and patients, as well as the measures taken by the
Defendants in order to fraudulently bill Metropolitan and collect PIP proceeds under the No-
Fault system. See Complaint, ¶¶ 25-40. While these paragraphs address the general framework

2

of the scheme, (specific examples of which are provided in later paragraphs) it is necessary in order to explain how the Defendants use false and/or exaggerated initial physical examination findings to justify the implementation of an extensive and bogus treatment program for their patients. Furthermore, these paragraphs demonstrate how the Defendants serve as a conduit between their patients and attorneys, thereby fostering their patients' ability to make bodily injury claims based on Spine Care's fraudulently inflated bills, which invariably exceed the $2,000.00 tort threshold as set forth in M.G.L. c. 231, §6D.

Additionally, the Defendants' improper conduct extends well beyond the initial examination and diagnosis of a patient. It is also evident as the Defendants determine and direct the treatment programs and implement the various treatment modalities provided to the patient, if any. See Complaint, ¶¶41-65. This portion of the Complaint describes:

(1)    when and by whom a patient's subjective complaints are assessed (¶¶ 45-47);

(2)    what types of treatment are administered (¶¶ 48-50);

(3)    whether these treatments are actually provided properly and by appropriately licensed staff (¶¶ 50, 52-54, 56);

(4)    whether the Defendants' Patient Progress Reports accurately depict the subjective complaints of the patients, a future treatment plan based on the current progress of the patient, and whether the reports were contemporaneously recorded at the time treatment was rendered (¶¶ 57-61); and,

(5)    the lack of any discernable difference in treatments provided by the Defendants to multiple individuals involved in the same motor vehicle accident, regardless of the patients' unique and individual characteristics, such as age, gender, weight,

3

> prior medical history, subjective complaints, or present physical condition (¶¶ 64 -
> 65).

The Complaint concludes its plain and concise summary of the Defendants' fraudulent scheme by stating the damages incurred by Metropolitan. First, the Complaint specifically and particularly alleges that Metropolitan was wrongfully induced into relying upon the Defendant's fraudulent medical records and paying more than $494,000.00 directly to the Defendants. See Complaint, ¶¶ 68-69. Secondly, the Complaint specifically and particularly alleges that the Defendants' fraudulent scheme enabled patients to bring unwarranted bodily injury claims against Metropolitan. Based on the Defendants' fraudulent medical bills, records, and notes, Metropolitan was wrongfully induced to paying in excess of $306,000.00 to bodily injury claimants. See Complaint, ¶¶ 75-78. Lastly, the Complaint alleges the additional damages incurred by Metropolitan through subrogation with other insurance carriers, as a result of the Defendants' fraudulent medical records, bills, and notes. Id., at ¶¶ 79-85.

Although the Defendants' scheme involves numerous transactions over a four-year period, with the underlying facts of the scheme "peculiarly within the defendants' control," Metropolitan's lengthy investigation was able to uncover a significant number of examples of the Defendants' routine fraudulent practices. See United States ex rel. Franklin v. Park-Davis, 147 F.Supp.2d 39, 47 (D.Mass. 2001). Metropolitan's Complaint provides the Defendants with no less than **forty (40)** paragraphs alleging specific examples of the types of fraudulent activities engaged in by the Defendants. See Complaint, ¶¶ 86-126. These paragraphs provide specific and unambiguous examples of the following fraudulent activities:

(1)  upcoding (¶¶ 86-94);

(2)  treatments for fictitious injuries (¶¶ 95-98);

4

(3)     billing for certain treatment modalities never provided to the patient (¶¶ 99-105).

(4)     false medical examination findings (¶¶ 106-109);

(5)     billing for improper treatments (¶¶ 110-114);

(6)     submission of treatment records inconsistent with actual treatment provided (¶¶ 115-117);

(7)     despite individual's unique personal attributes, patients receiving virtually identical treatment (¶¶ 118-119; Charts 1 and 2); and,

(8)     improper and illegal relationships with personal injury attorneys (¶¶ 120-126).

These particular examples of the Defendants' fraudulent conduct provided the Defendants with patient names, as well as claim numbers.[1]  Charts 1 and 2 provide a specific example for each year (2001-2004), whereby two dissimilar patients involved in the same motor vehicle accident received virtually the same total procedures billed, total procedures requiring direct patient contact, total patient visits, and total amount billed by the Defendants. See Complaint, ¶ 119. It is clear from Metropolitan's well pled Complaint that the Defendants have been sufficiently put on notice of the precise misconduct alleged by Metropolitan, which has been ongoing and present in every claim submitted by the Defendants to Metropolitan from 2001 to the present. Furthermore, Metropolitan's causes of action, alleged in ¶¶ 128-165, are properly and fully pled, supported by the allegations within the entire Complaint.

## III.   LEGAL ANALYSIS

### A.     METROPOLITAN'S COMPLAINT MEETS THE PLEADING REQUIREMENTS OF FED.R.CIV.P. 9(b)

#### 1.     Fed.R.Civ.P. 9(b) Standard

---

[1] By providing a claim number, Metropolitan has, in essence, provided the Defendant with: 1) the patient names; 2) date of loss; 3) treatment dates; 4) medical records; and, 5) corresponding billing records.

5

The purpose of Fed.R.Civ.P. 9(b) is to ensure that a defendant is apprised "of fraudulent claims and of the acts that form the basis for the claim." Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985); See also Franklin, 147 F.Supp.2d at 46 (Rule 9(b)'s requirements enable a defendant to "prepare meaningful defenses to charges of fraud"). Metropolitan's Complaint clearly and succinctly describes the Defendants' complex and lengthy scheme to defraud Metropolitan, while at the same time providing the Defendants with specific allegations which identify, with particularity, the time and place of the fraudulent acts, as well as the manner in which the fraud was perpetrated. The Defendants' Motion to Dismiss is predicated upon a misreading of Metropolitan's Complaint and the applicable case law.

It is well-established within the First Circuit, that under traditional circumstances, Rule 9(b) requires that fraud be pled with specificity concerning the "time, place and content of an alleged false representation." Hayduk, 775 F.2d at 444 (quoting McGinty v. Beranger Volkswagon, Inc., 633 F.2d 226 (1st Cir. 1980)); See also Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996). This heightened pleading requirement ensures that charges of fraud are no mere "fishing expeditions" or "strike suits," and are not premised on mere conclusory allegations of fraud. See Franklin, 147 F.Supp.2d at 46.

Notably, the Defendants' analysis of the pleading requirements pursuant to Rule 9(b), stops with Hayduk and Doyle. Despite the Defendants' arguments to the contrary, a review of the decisions within the First Circuit, particularly in the District of Massachusetts, clearly indicates that Rule 9(b)'s pleading requirements have evolved and been refined beyond the basic tenants set forth in Hayduk and Doyle. See In re Pharmaceutical Industry Average Wholesale Price Litigation, 307 F.Supp.2d 196, 208 (D.Mass. 2004); Franklin, 147 F.Supp.2d at 46-47. Courts have sought to balance the relationship between Rule 8 and Rule 9(b) in circumstances

6

where the alleged scheme of fraud is complex, involving numerous transactions over a long period of time, as well as where the underlying facts indicating fraud are uniquely within the defendant's control. Id.

Indeed, this approach has been adopted by several circuits and district courts throughout the United States. See, In re Cardiac Devices Qui Tam Litigation, 221 F.R.D. 318, 333 (D.Conn. 2004)(It is "common sense" that the sufficiency of pleadings under Rule 9(b) are dependent upon the complexity of the scheme, as well as the number of transactions and length of time involved); Levine v. Metal Recovery Technologies, Inc., 182 F.R.D. 112, 115 (D.Del. 1998)(Rule 9(b) does not require an "exhaustive cataloging of facts" but only enough specificity to ensure the plaintiff has investigated); Cottman Transmission Systems, Inc. v. Dubinsky, 95 F.R.D. 351, 352-353 (E.D.P.A. 1982)(fraud does not have to be pled with "absolute and detailed particularity," nor is the plaintiff required to "pinpoint" with "deadly accuracy" the time or place that the false representations were made); United States ex. Rel. Johnson, Jr. v. Shell Oil Company, 183 F.R.D. 204, 206-207 (E.D.Tex. 1998)(Rule 9(b) requirements are less stringently applied where the fraud alleged is complex and occurs over a long period of time).

While most of the case law providing an analysis of Rule 9(b) requirements in connection with complex fraudulent schemes arise in *qui tam* litigation pursuant to the False Claims Act, 31 U.S.C.A. §3729, the analysis of the issue is applicable to the case at bar. In Franklin, the District Court set forth the traditional requirements under Rule 9(b), then went on to describe certain circumstances whereby the strict requirements of Rule 9(b) should be relaxed in conjunction with Fed.R.Civ.P. 8(a). Franklin, 147 F.Supp.2d at 46-47. The Franklin Court held that Rule 9(b)'s strict requirements should be relaxed "where facts underlying the fraud are peculiarly within the defendants' control." Id., at 47 (citing Boston & Me. Corp. v. Hampton, 987 F.2d 855

866 (1st Cir. 1993)). In this particular type of instance, "a plaintiff may be excused from pleading the circumstances of fraud with a high degree of precision." Id., See In re Pharmaceutical Industry, 307 F.Supp.2d at 208 (where a fraudulent scheme is "complex and 'ar-reaching," it would be "ungainly, if not impossible" for a plaintiff to plead every instance of fraud).

The Court in Franklin also noted that Rule 9(b) requirements should be relaxed where "the alleged scheme of fraud may involve numerous transactions or transactions that occur over a long period of time, and pleading the specifics with regard to every instance of fraudulent conduct may be impractical." Franklin, 147 F.Supp.2d at 47. In United States ex rel. Harris v. Bernad, 275 F.Supp.2d 1 (D.D.C. 2003), a case particularly on point, the government alleged in its Complaint that the defendants engaged in a complex scheme to defraud the government through "upcoding," or submitting claims with billing codes representing a higher level of care than was actually provided. Harris, 275 F.Supp.2d at 8; In re Cardiac Devices, 221 F.R.D. at 333-334 (discussing the Harris findings with regard to relaxing Rule 9(b)'s requirements in FCA cases of complex fraud).

The Harris Complaint alleged the time and place of the defendants' fraudulent scheme by indicating the span of time ("1993 and continu[ing] into the present") and the general location ("in the defendants' offices located in Washington"). Harris, 275 F.Supp.2d at 8. With regard to the content of the fraudulent scheme, the Complaint in Harris further alleged and identified the defendants' complex scheme, and then indicated twelve (12) patient cases as examples of that scheme. Id. The Court in Harris found that the twelve patient cases provided by the plaintiff, "adequately provide the specificity required in complex fraud cases, even if these patients' cases

are only exemplary." Id. In reviewing the Complaint for adherence to the pleading requirements

of Rule 9(b), the Harris Court denied the defendants' motion to dismiss and:

> determine[d] that by naming the individual defendants, stating the
> time period during which the alleged fraud took place, asserting
> where the fraud took place, describing the fraudulent scheme, and
> setting forth the fraudulently gained benefit, the [plaintiff had]
> provided an adequate factual basis for its allegations of fraud under
> Rule 9(b).

Id., at 9. Based on the applicable case law, it is clear that Metropolitan's Complaint meets the

pleading requirements of Rule 9(b) in cases involving complex fraud.

The Defendants have placed great emphasis on the this Court's decision in Gublo v.

Novacare, Inc., 62 F.Supp.2d 347 (D.Mass. 1999), in which a portion of the plaintiff's Amended

Complaint was dismissed for failure to comply with the requirements of Rule 9(b). Gublo, 62

F.Supp.2d at 354-355. In Gublo, the Court emphasized the basic rule that fraud be pled with

specificity and particularity, but also recognized that there are instances, such as when the facts

relating to the fraud are peculiarly within the defendant's knowledge, where the strict

requirements of Rule 9(b) might be relaxed. Id., at 354. However, the Court also cautioned that

the relaxation of Rule 9(b) was not to be used as a "license to base claims of fraud on speculation

and conclusory allegations." Id. (quoting U.S. ex rel. Thompson v. Columbia/HCA Healthcare

Corp., 125 F.3d 899, 903 (5th Cir. 1997)). In applying these requirements, the Court in Gublo

dismissed a portion of the plaintiff's Amended Complaint, stating that "the plaintiffs simply

allege three methods by which [the defendant] is said to have inflated its bills to the government,

without citing a single instance of a false claim." Id., at 354.

Metropolitan's Complaint is readily distinguishable from the Amended Complaint at

issue in Gublo. Whereas the Complaint in Gublo failed to cite a single instance of a false claim,

Metropolitan's Complaint not only alleges methods of fraudulent conduct, but provides specific

examples of each type of fraudulent conduct alleged. See Complaint, ¶¶ 86-126. Through these

specific examples, Metropolitan is not relying on conclusory allegations and speculation, as

suggested by the Defendants, and frowned upon by the Courts. Rather, Metropolitan has alleged

a complex and comprehensive scheme of fraud using specific patient examples in order to meet

the requirements of Rule 9(b), much in the same way the government properly did in Harris.

Unlike the majority of cases where a claim of fraud involves an otherwise legitimate

individual or corporation that engaged in a specific, identifiable, and perhaps isolated act of

fraud, Metropolitan has clearly and succinctly alleged that Dr. Huynh and Spine Care have been

doing business since January 2001 with no purpose other than to perpetuate a fraudulent scheme

to wrongfully and continuously obtain insurance proceeds from Metropolitan and other

automobile insurance carriers doing business in the Commonwealth of Massachusetts. See

Complaint, ¶¶ 1-3, 24-127. This is not a series of isolated and unrelated fraudulent acts, but

rather a concerted effort to systematically defraud insurers such as Metropolitan over a

prolonged period of time.

This type of perpetual scheme necessarily must be complex and intentionally devoid of

any readily recognizable fraudulent patterns that, if discovered, would remove any veil of

legitimacy and threaten the continued prosperity of the Defendants. As such, it is paramount to

the success of the scheme that the Defendants vary the particular fraudulent activities for each

individual insurance claim, while at the same time, keeping this information peculiarly within

their own knowledge.

Despite the Defendants' best efforts to conceal their wrongful activities, Metropolitan's

extensive investigation discovered and identified numerous techniques by which the Defendants

attempted to mask the particular fraudulent misrepresentations within the individual insurance

10

claims. These techniques were plainly alleged within the Complaint. See Complaint, ¶¶ 25-85.

Rather than rely on mere generalizations and "rhetoric" as suggested by the Defendants,

Metropolitan's Complaint goes on to provide specific examples of each of those techniques,

further identifying by claim number the source of information. See Complaint, ¶¶ 86-126.

Indeed, the Defendants fail to identify one particular allegation that fails to meet the

requirements, but rather with a broad brush stroke attempt to discredit the Complaint, and seek

its dismissal by merely suggesting that the specific instances identified are somehow "rhetoric."

Metropolitan's Complaint sufficiently and properly balances the "short and plain" standard of

Rule 8 with the particularity requirements of Rule 9(b), and therefore, the Defendants' Motion to

Dismiss must be denied.

### 2.    Dismissal of Metropolitan's Complaint is Not Appropriate

The District Court for the District of Massachusetts has held:

> [a] court should hesitate to dismiss a complaint under Rule 9(b) if
> the Court is satisfied (1) that the defendant has been made aware of
> the particular circumstances for which she will have to prepare a
> defense at trial, and (2) that plaintiff has substantial prediscovery
> evidence of those facts.

Franklin, 147 F.Supp.2d at 47. It is clear from the allegations within Metropolitan's Complaint,

as well as the circumstances surrounding this litigation, that the Defendants have been made

aware of the particular allegations for which they will have to prepare a defense.

Without revisiting each specific allegation, the Complaint provides the Defendants with

the particular types of fraudulent activities they have been accused of, and for which they must

prepare a defense. See Complaint, ¶¶ 86-126. In addition, counsel for the Defendants were

provided with a wealth of information from the Massachusetts Division of Licensure, including

patient examination under oath transcripts and copies of the Defendants' own medical records,

11

all of which pertained to specific allegations within Metropolitan's Complaint. These documents provided the Defendants even more notice regarding the particular types of fraud alleged by Metropolitan, as well as the type of evidence in Metropolitan's possession and available to prov the various causes of action. Furthermore, this same information, along with additional documentation, was provided to the Defendants through Senior Investigator, Mark Huard's Affidavit, which accompanied Metropolitan's Supplemental Opposition to Defendants' Motio to Dissolve *Ex Parte* Attachments. Indeed, this is more evidence that the information has beer peculiarly within the Defendants' knowledge. As such, it is extremely disingenuous for the Defendants to suggest they do not have the information necessary to prepare a defense in this action.

Additionally, the Defendants' implication that Metropolitan's Complaint constitutes a "strike suit" or "fishing expedition" in hopes of discovering the appropriate causes of action at a later date is baseless and warrants no consideration. Metropolitan has substantial prediscovery evidence of the facts alleged within its Complaint, of which the Defendants are fully aware. See Franklin, 147 F.Supp.2d at 47. Metropolitan has been conducting an investigation into the Defendants' fraudulent schemes for well over a year. While Metropolitan has immediately produced additional evidence at the request of the Court, the Defendants chose to feign ignorance in open Court, and improperly—and without any good faith basis—deny basic allegations within the Complaint that can easily be confirmed as true, simply by reviewing the Defendants' *own* documents, as indicated in the Complaint. See Complaint, ¶ 90. As such, the Defendants' have provided no evidence to this Court that Metropolitan lacks substantial prediscovery evidence, or is otherwise "fishing" for a cause of action, and therefore, the Defendants' motion should be denied.

**B.    METROPOLITAN'S COMPLAINT PROPERLY ALLEGES ALL FOUR CAUSES OF ACTION**

The Defendants assert that Metropolitan has not met the requirements of Rule 12(b)(6) by failing to state a claim upon which relief can be granted. This allegation has been made with regard to each of Metropolitan's four causes of action. As with the Defendants' attempt to have the Complaint dismissed under Rule 9(b), this effort falls similarly short of mandating the dismissal of the Complaint.

### 1.    Legal Standard

In addressing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court shall "take the well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in his favor." Coyne v. City of Somerville, 972 F.2d 440, 442-443 (1st Cir. 1992). " A complaint must contain 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir. 1996)(quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)). A complaint should not be dismissed under Fed.R.Civ.P. 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Roeder v. Alpha Indus., Inc., 814 F.2d 22, 25 (1st Cir. 1987)(quoting Conley v. Gibson, 355 U.S. 41, 45-46(1957)); See also Glassman, 90 F.3d at 628 ("It is, of course, true that at the start of complex litigation a party may not have all the facts so courts normally hesitate to dismiss under Fed.R.Civ.P. 12(b)(6) at the outset"). Applying this standard, it is clear that Metropolitan has met its burden with regard to each of the four causes of action alleged within its Complaint.

## 2.    Metropolitan Has Properly Pled Fraud

In order to properly plead fraud and deceit, a plaintiff must show "that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and the plaintiff relied upon the representation as true and acted upon it to his damage." Danca v. Taunton Sav. Bank, 385 Mass. 1, 8 (1982)(quotation omitted); Reisman v. KPMG Peat Marwick LLP, 57 Mass.App.Ct. 100, 108-109 (2003). The Defendants proffer *three (3) sentences* arguing that Metropolitan has failed to properly plead fraud under Rule 12(b)(6); all three sentences simply suggest that Metropolitan has not alleged the detrimental reliance element. While Metropolitan can immediately counter this meritless assertion by referring the Defendants, and this Honorable Court, to ¶¶ 19, 68, and 133 of the Complaint, Metropolitan can and has established that it has met each required element.

First, Metropolitan's Complaint clearly alleges that the Defendants made false representations of material fact. See Complaint, ¶¶ 36-39, 41, 43, 51-52, 55, 58, 61, 63-64, 66, 68, 76-77, 90, 96-100, 102, 104, 107-109, 113-117, 129. Metropolitan's Complaint clearly alleges that these materially false representations were made by the Defendants with knowledge of their falsity. Id. at ¶¶ 24, 36, 67, 110-111, 127, 129, 130. Metropolitan's Complaint also alleges that these materially false representations were made with the purpose of inducing Metropolitan to act thereon. Id. at ¶¶ 24, 66-69, 77, 127, 129, 131-132. Lastly, Metropolitan's Complaint alleges that it did, in fact, rely upon the Defendants' materially false representations and was damaged as a result. Id. at ¶¶ 19, 68-69, 77-78, 82-85, 133-135. Taking these well pled allegations as they appear, and providing Metropolitan every reasonable inference in its favor, it is clear that Metropolitan's Complaint properly pled its fraud and deceit cause of action. See Danca, 385 Mass. at 8.

### 3.    Metropolitan Has Properly Pled its Breach of Contract Claim

While the Defendants have asserted that Metropolitan is attempting to "turn §34M on its head," Metropolitan has done nothing more than apply basic contract principles to an undisputed contractual relationship between the parties, which is created by the Massachusetts No-Fault statute. It is well-established Massachusetts law that "there is no distinction between contractual obligations that derive from an agreement and those imposed by statute." Thibodeau v. Town of Seekonk, 52 Mass.App.Ct. 69, 73 (2001)(quoting Lexington v. Bedford, 378 Mass. 562, 563 (1979))(holding that M.G.L. c. 231, §6C, concerning interest added to damages in contract actions, was applicable to enforcement of another Massachusetts statute establishing a contractual relationship between two parties).

One of the basic principles of contract law is that "a contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." I & R Mechanical, Inc. v. Hazelton Mfg. Co., 62 Mass.App.Ct. 452, 454 (2004)(quoting Restatement (Second) of Contracts §1 (1981)). The provisions of M.G.L. c. 90, §34M create a contract between an insurer and unpaid party (typically a healthcare provider), and specifically establishes the contractual obligations of **both** parties, the performance of which is recognized as a duty under the statute.

Chapter 90, §34M provides in pertinent part:

> Personal injury protection benefits and benefits due from an insurer assigned shall be due and payable as loss accrues, *upon receipt of reasonable proof* of the fact and amount of expenses and loss incurred...

> In any case where benefits due and payable remain unpaid for more than thirty days, any unpaid party shall be deemed *a party to a contract* with the insurer responsible for payment and shall therefore have a right to commence an action in contract for payment of amounts therein

15

                        determined to be due in accordance with the provisions of
                        this chapter. (emphasis added).

       The first portion of this provision requires that PIP benefits will be "due and payable"

only upon the receipt of "reasonable proof" of the expenses incurred. As such, a party seeking

PIP benefits, including healthcare providers like the Defendants, have an obligation to provide an

insurer with reasonable proof of the expenses incurred. Should the party fail in this obligation,

then the insurer is relieved of any obligation to pay, even under the statutorily imposed contract.

Moreover, the submission of false bills and records under M.G.L. c. 90, §34M, for fictitious

treatment constitutes a breach of the contract created by the statute.

       Metropolitan has alleged, through its Complaint, that the Defendants, aware of the

requirements of M.G.L. c. 90, §34M, purposely submitted fraudulent medical records and bills,

thus inducing Metropolitan to believe that the Defendants have provided "reasonable proof" of

the medical expenses incurred by their patients, eventually resulting in Metropolitan's

unwarranted payment of PIP benefits to the Defendants under the statutory contract. See

Complaint, ¶¶ 24, 66-74. Metropolitan's Complaint also contains allegations that the Defendants

knowingly took steps to hinder Metropolitan's ability to utilize the safeguards provided under the

statute to combat fraudulent claims. Id., at ¶¶ 70-72. In fact, the Defendants have instituted

small claims litigation against Metropolitan for payment under the statutory contract, in certain

circumstances where Metropolitan has denied their claim. Id., at ¶ 73.

       A claimant determined to have submitted a fraudulent insurance claim commits such a

fundamental breach of contract that it acts to bar the assertion of any further right under the

contract by the claimant. Aetna Casualty Surety Company v. P & B Auto Body, 43 F.3d. 1546,

1569 (1st Cir. 1994). This basic tenet of contract law, as applied in the First Circuit, also applies

to the statutory contact between Metropolitan and the Defendants. See generally, Thibodeau, 52

                                              16

Mass.App.Ct. at 74. As such, Metropolitan is entitled to bring a breach of contract claim against the Defendants.

Ordinarily, a party seeking to make a claim for breach of contract must plead "(1) that the parties had an agreement supported by valid consideration; (2) that plaintiffs were ready, willing and able to perform; (3) that defendant's breach has prevented them from performing; and (4) that plaintiffs were damaged." Doyle, 103 F.3d at 195. Where there is a statutorily created contract, the need to allege the elements of a valid contract, such as an agreement supported by valid consideration, and a willingness and ability to perform, becomes moot, so long as the existence of the statutory contract is alleged. See generally Telephone Answering Service of Boston, Inc. v. New England Telephone & Telegraph Co., 358 Mass. 822 (1971)(a plaintiff seeking to plead a cause of action in contract must "state with 'substantial certainty' the facts showing the existence of the contract and the legal effect thereof"(quotations omitted)). Therefore, as long as a plaintiff alleges (1) the existence of the statutory contract, (2) the terms of the statutory contract, (3) a breach of that contract, and (4) damage as a result of the breach, the party's breach of contract action should survive a Rule 12(b)(6) challenge. Id.; Doyle, 103 F.3d at 195 (regarding the need to plead the final two elements, which are breach and damages).

Based on the foregoing analysis, it is clear that Metropolitan has sufficiently stated a breach of contract claim against the Defendants. First, Metropolitan has alleged the existence of a statutory contract, pursuant to M.G.L. c.90, §34M, between itself and the Defendants. See Complaint, ¶¶ 17, 24, 26, 73-74, 138-139. The terms of the statutory contract between Metropolitan and the Defendants also were alleged and referred to in the Complaint. Id. at 16-17, 23, 26, 138. Likewise, Metropolitan clearly and unequivocally alleged that the Defendants breached their contractual obligations. Id., at 24, 66-67, 73-74, 140. Just as with the other

17

elements, Metropolitan properly alleged that it had suffered damage as a result of the

Defendants' breach. Id., at 68-69, 77-78, 139. It is clear that Metropolitan is entitled to bring a

breach of contract action against the Defendants for their willful and intentional violations of

M.G.L. c. 90, §34M. Furthermore, this cause of action should be maintained, as Metropolitan

has properly pled each element.

## 4. Metropolitan Has Properly Pled Negligence

Under Massachusetts law, there are four elements comprising a claim for negligence: "(1)

a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; (3)

causation; and (4) actual loss by the plaintiff." Delaney v. Reynolds, 63 Mass.App.Ct. 239, 241

(2005)(quoting, Glidden v. Maglio, 430 Mass. 694, 696 (2000)).  Despite the Defendants'

tenuous arguments to the contrary, Metropolitan has pled each element of negligence clearly and

unequivocally.

Metropolitan frequently referred to Dr. Huynh's duties as a licensed chiropractor, which

are owed to Metropolitan, as Dr. Huynh submits his chiropractic bills to Metropolitan for

payment under M.G.L. c. 90, §34M.  In fact, Metropolitan alleges numerous duties of the

Defendants. See Complaint, ¶¶ 33, 49-52, 87-90, 101, 106, 110, 121, 143-144, 146, 148, 150.

The Defendants have argued that by omitting the specific Massachusetts regulations

corresponding to each duty, Metropolitan has failed to plead that the Defendants owed a duty to

Metropolitan. To the contrary, Metropolitan specifically alleged the **actual duty** owed by the

Defendants to Metropolitan, rather than merely refer to a specific regulation.

Dr. Huynh, as a licensed chiropractor, must be deemed to have knowledge of the

applicable Massachusetts Chiropractic Standards of Practice and Professional Conduct, as set

forth in 233 CMR 4.00.[2] Rule 4.02 prohibits a chiropractor from allowing unlicensed staff from administering supportive modalities when a licensed chiropractor is not on the premises. 233 CMR 4.02; See Complaint, ¶¶ 110, 146. Rule 4.03 prohibits a chiropractor from delegating certain patient care functions. 233 CMR 4.03; See Complaint, ¶ 148. Rule 4.05 requires a chiropractor to maintain legible, accurate, and contemporaneously recorded patient records, which are to be made available to a party (ie, Metropolitan) authorized to receive them. 233 CMR 4.05; See Complaint, ¶ 144. Rules 4.08 and 4.09 prohibit a licensed chiropractor from engaging in the overutilization of the practice of chiropractic and improperly billing for treatments. 233 CMR 4.08 and 4.09; See Complaint, ¶ 150.

In addition to the aforementioned duties of a licensed chiropractor, Dr. Huynh also has the duty to refrain from making false statements or material misrepresentations in connection with any claim for a health care benefit. 233 CMR 4.11. This last duty, at a minimum, may be gleaned from the Complaint's frequent references to the Defendants' submission of false medical records, bills, and notes in connection with patient claims for PIP benefits pursuant to M.G.L. c. 90, §34M. See Complaint, ¶¶ 24, 66-69, 74-78, 153. Clearly, the Defendants owe this duty to Metropolitan, as it is the one ultimately relying on the Defendants' medical records and bills to ascertain whether insurance proceeds should be paid.

Metropolitan's Complaint also sufficiently alleges that the Defendants breached these various duties. See Complaint, ¶¶ 51-52, 145, 147, 149, 151-152. The Complaint alleges the damage sustained as a result of the Defendants' negligence. See Complaint, ¶¶ 68-69, 75-78, 82, 154. Likewise, Metropolitan's Complaint sufficiently alleges the causation element. See

---

[2] If Dr. Huynh is unaware of the Chiropractic Rules of Professional Conduct, this would be a "textbook" example of negligence, to use the Defendants' own language.

19

Complaint, ¶¶ 68, 75-76, 153-154.  As such, the Defendants' assertion that Metropolitan has failed to properly plead its negligence claim must fail.[3]

### 5. Metropolitan Has Properly Pled Its Unfair/Deceptive Trade Practice Claim

In so much as the Defendants summarily dismiss Metropolitan's unfair trade practice claim with one sentence in their Motion's Introduction, without citing a single authority, Metropolitan asserts that it has pled each and every element of this cause of action, in accordance with the statutory provisions.  M.G.L. c. 93A, §§2 and 11; See Complaint, ¶¶ 6, 36-40, 68-69, 74, 77-78, 129-135, 137-141, 156-158.  Insofar as the Defendants rely on their arguments against Metropolitan's fraud and breach of contract claims, Metropolitan asserts, based on its foregoing analysis, that Metropolitan's entire Complaint, including its unfair trade practice claim, complies with the requirements of Fed.R.Civ.P. 8(a) and 9(b), and is properly pled in accordance with the case law concerning Fed.R.Civ.P. 12(b)(6).

### IV.   CONCLUSION

Based on the foregoing analysis, Metropolitan's Complaint meets the requirements of Fed.R.Civ.P. 9(b), and sufficiently pleads each of its causes of action to survive the Defendants' Fed.R.Civ.P. 12(b)(6) argument.  Therefore, the Plaintiff, Metropolitan Property and Casualty Insurance Company, respectfully requests that this Honorable Court deny the Defendants' Motion to Dismiss and award any other relief deemed just and proper.

---

[3] To the extent the Defendants attempt to argue that Metropolitan has alleged a negligent misrepresentation claim, Metropolitan asserts, *arguendo*, that it has also sufficiently pled each element of the negligent misrepresentation cause of action.  See Savers Property & Cas. Ins. Co. v. Admiral Ins. Agency, 61 Mass.App.Ct. 158, 169 (1998)(describing the elements of a negligent misrepresentation cause of action); See Complaint, ¶¶ 66-69, 74, 145, 151-154, 157 (alleging all elements of negligent misrepresentation).

# REQUEST FOR ORAL ARGUMENT

Respectfully submitted,
By the Plaintiff,
Metropolitan Property and Casualty
Insurance Company,
By its attorneys,

Glenda H. Ganem, Esq.
BBO# 564374
Clayton R. Henderson, Esq.
BBO# 659532
McGovern & Ganem, P.C.
21 Merchants Row, 4th Floor
Boston, MA 02451
(617) 723-1444

Date: October 7, 2005

# CERTIFICATE OF SERVICE

I, Clayton R. Henderson, attorney for the Plaintiff, Metropolitan Property and Casualty Insurance Company, hereby certify that I have this day delivered, via first class mail, postage prepaid, a copy of the within document direct to:

Andrew Nebenzahl, Esq.
Nebenzahl DuBosque, LLP
One Post Office Square
Sharon, MA 01950

James C. Rehnquist, Esq.
Goodwin Procter
Exchange Place
Boston, MA 02109

**Signed under the pains and penalties of perjury this 7th day of October, 2005.**

Clayton R. Henderson, Esq.

21