FILED
UNITED STATES DISTRICT COURT  IN CLERKS OFFICE
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05 11287 RGS 37

U.S. DISTRICT COURT
DISTRICT OF MASS.

METROPOLITAN PROPERTY AND            )
CASUALTY INSURANCE COMPANY,          )
Plaintiff,                           )
                                     )
v.                                   )
                                     )
HAI NHU HUYNH and                    )
SPINE CARE AND THERAPY, INC.,        )
Defendants.                          )

## PLAINTIFF, METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

The Plaintiff, Metropolitan Property and Casualty Insurance Company ("Metropolitan")

submits this Opposition to the Defendants' Motion for Reconsideration of this Honorable Court's

October 12, 2005 Order Denying Defendants' Motion to Dissolve Attachments.

## I.    INTRODUCTION

Metropolitan has met the burden required in order to maintain the attachments against the

Defendants, Hai Nhu Huynh ("Dr. Huynh") and Spine Care and Therapy, Inc. ("Spine Care").

On October 12, 2005, this Honorable Court denied, in part, the Defendants' Motion to Dissolve

*Ex Parte* Attachments. See, Docket No. 53. In doing so, the Court found that not only had

Metropolitan sufficiently established that it was likely to succeed on the merits of its claims

against the Defendants, but that it was likely to recover an amount greater than the $800,000.00

attachment previously authorized. Id.; See also, Aetna Casualty and Surety Co. v. Rodco

Autobody, 138 F.R.D. 328, 331-332 (D.Mass. 1991); Mass.R.Civ.P. 4.1(c) and 4.2(c).

Despite the Defendants' efforts to detract from the legal issues through personal attacks

on counsel, on the Plaintiff, and on the unrefuted and independent evidence against them, the

Defendants' Motion for Reconsideration still falls woefully short of sufficiently challenging the legal and factual basis of the Court's standing Order. Notably, the Defendants have abandoned the expert opinion of Dr. Reida, and now rely solely upon the supplemental affidavit of Dr. Huynh. Dr. Huynh's Affidavit is not only self-serving, but extends well beyond the bounds of his own personal knowledge and area of expertise; namely chiropractic medicine. It is most telling that Dr. Huynh's second affidavit is again silent as to the majority of Metropolitan's specifically pled allegations of fraudulent conduct. Rather, Dr. Huynh's Affidavit primarily focuses on one patient, Steven Nguyen; in order to counter only one of Metropolitan's numerous allegations of fraudulent conduct relating to this patient. Furthermore, the Defendants again attempt to deflect responding to the other allegations of fraud by improperly challenging the ability of professional and court certified interpreters to translate Metropolitan's questions during the patient examinations under oath, despite the fact that neither the witness nor their own counsel has ever challenged the interpretation either during the statement or thereafter.

Even a cursory review of the limited patient records submitted by the Defendants in support of Dr. Huynh's Affidavit reveals that these records act as further evidence of Dr. Huynh's intentional efforts, either by deliberate omission or by false statements, to defraud Metropolitan and mislead the Court. Although an in depth analysis will follow, as a preliminary matter it must be noted that, by way of example only, a patient, Long V. Vo, referred to in Dr. Huynh's Affidavit, has repeatedly treated at Spine Care and submitted numerous insurance claims in connection with motor vehicle accidents; a fact which is glaringly absent from Dr. Huynh's Affidavit.[1] Moreover, the Defendants' suggestion that certain patients did not meet the $2,000.00 statutory tort threshold is also false, as the identified patients treated at multiple

---

[1] See, Mark O. Huard Supplemental Affidavit, dated October 26, 2005 ("Huard Supplemental Affidavit"), hereafter attached as Exhibit "1," ¶¶ 9-17.

2

chiropractic and physical therapy clinics, in addition to Spine Care, for the same accident, and ultimately completed their treatment with Spine Care, thereby reaching and exceeding the tort threshold.[2]  As such, the Defendants' false billing and questionable treatment, if any, of these patients directly contributed to the amount these patients received through Bodily Injury insurance claims.

The Defendants' challenge to this Honorable Court's ruling that Metropolitan was likely to succeed on the merits against the Defendants, in an amount greater than $800,000.00, is insufficient to merit reconsideration.  As such, the Defendants' Motion for Reconsideration should be denied.  Moreover, based on the deliberate omissions and the false statements made by Dr. Huynh, his Affidavit should be stricken from the record.

## II.    LEGAL ANALYSIS

### A.    LEGAL STANDARD

Applying Massachusetts law, the District Court of Massachusetts has held that the central issue to be considered by the court in determining whether an attachment should be maintained, is whether the plaintiff is "likely to prevail on the merits and obtain damages in the necessary amount." Rodco, 138 F.R.D. at 332, quoting (Anderson Foreign Motors Corp. v. New England Toyota Distributor, Inc., 475 F.Supp. 973, 978 (D.Mass. 1979.) See Boston Trading Group, Inc. v. Carter, 561 F.Supp. 1175, 1176 (D.Mass. 1983)(a showing of a 'reasonable likelihood' of success on the merits is required for the issuance of a writ of attachment or of trustee process).

It must be noted that "Massachusetts courts have not determined the exact evidentiary standard (e.g. clear and convincing or preponderance of the evidence) for a 'likelihood' of a certain recovery to be found. Sheehan v. Netversant-New England, Inc., 345 F.Supp.2d 130, 132 (D.Mass. 2004), citing (Montague Corp. v. Simon Worldwide Inc., 2001 WL 1226854

---

[2] Id., at ¶¶ 3-17.

3

(Mass.Super.)(Lauriat, J.); See also Rodco, 138 F.R.D. at 332 ("Mass.R.Civ.P. 4.1 and 4.2 are silent as to the quality of evidence or quantum of proof required to obtain court approval of an attachment"). However, what is certain is that Massachusetts courts recognize that "the party seeking an attachment *need not be certain of prevailing*." Montague, 2001 WL 1226854 *2 (emphasis added). It is Metropolitan's position that under any standard, this Court properly ruled in Metropolitan's favor and denied the Defendants' request to have the attachments dissolved.

The Defendants concede that Massachusetts courts have not established the evidentiary standard relative to Massachusetts prejudgment attachments. Without any basis, the Defendants suggest that this Court apply the procedural pleading requirements of Fed.R.Civ.P. 9(b) to an unresolved evidentiary state law issue. The Defendants fail to cite any authority, federal or state, supporting this approach. Indeed, "[f]ederal courts sitting in diversity should be cautious about pushing state law to new frontiers." Nicolaci v. Anapol, 387 F.3d 21, 27 (1st Cir. 2004)(quoting Kelly v. Marcantonio, 187 F.3d 192, 199 (1st Cir. 1999))(quotations omitted); See also, Sheehan, 345 F.Supp.2d at 132 (District Court refrained from establishing evidentiary standard for Mass.R.Civ.P. 4.2 by opting to deny the plaintiff's motion for attachment on trustee process, because "the amount of Plaintiff's potential recovery is too uncertain to warrant attachment under *any reasonable standard*.")(emphasis added). Given this well-established practice within the First Circuit, the Defendants' misguided approach warrants no consideration.[3]

---

[3] While the Defendants cite no authority regarding the application of Fed.R.Civ.P. 9(b) requirements to Mass.R.Civ.P. 4.1 and 4.2, the Defendants erroneously rely on U.S. ex rel. Karvelas v. Melrose-Wakefield Hospital, 360 F.3d 220, n. 14 (1st Cir. 2004), as authority for the proposition that the First Circuit requires a plaintiff to resort to fact pleading in complex fraud cases. The primary holding of Karvelas is that Fed.R.Civ.P. 9(b) permits claims of fraud to be pled on information and belief, so long as the allegations are pled with particularity, and the complaint sets forth the facts upon which the belief is founded. Karvelas, 360 F.3d at 226. (citing New England Data Services, Inc. v. Becher, 829 F.2d 286, 288 (1st Cir. 1987))(quotations omitted). If this standard is to be applied to prejudgment attachment issues under Massachusetts law, it is clear Metropolitan meets the standard, as Mark Huard's Affidavit incorporates specific allegations of various types of fraudulent conduct engaged in by the Defendants. In the limited circumstances where Mr. Huard's Affidavit is based on "information and belief," the

4

By any standard, it is clear that Metropolitan, through Mark Huard's Affidavits and the applicable case law, has met the requirements of Mass.R.Civ.P. 4.1 and 4.2, by stating specific facts, as this Court has already determined, that establish the likelihood that Metropolitan will prevail on the merits of its claims against the Defendants in an amount greater than $800,000.00. Therefore, the Defendants' Motion for Reconsideration should be denied.

## B.   DR. HUYNH'S AFFIDAVIT FAILS TO COUNTER THE QUALITY AND QUANTITY OF METROPOLITAN'S EVIDENCE

The Defendants remain unable to challenge Metropolitan's substantial evidence of the Defendants' fraudulent conduct. During the Defendants' first challenge of the *ex parte* attachments, the Defendants proffered the expert opinion of Daniel J. Reida, DC, in addition to an affidavit from Dr. Huynh. See, Docket Number 39, Exhibits B and C ("Reida Affidavit"). According to Dr. Reida's Affidavit, his expert opinion was based on a review of the Defendants' own medical records, as well as conversations with Dr. Huynh, which were intended to "understand the treatment decisions which were made and the clinical basis for those decisions." Reida Affidavit, ¶ 5. Not only was the sworn testimony of the Defendants' own patients not referenced in Dr. Reida's analysis, but Dr. Reida failed to confirm that he reviewed any or all records from the relevant period of 2001 to 2004. It is therefore no surprise that the Defendants have abandoned Reida's Affidavit in seeking reconsideration.

Having no alternative to potential perjury by their expert, the Defendants do not submit a second affidavit of Dr. Reida, but now seek to rely solely upon another affidavit of Dr. Huynh. While Dr. Huynh's Affidavit is conspicuously silent on the majority of Metropolitan's allegations, it raises peripheral issues, some of which are outside Dr. Huynh's apparent area of expertise in an effort to appear to respond to the allegations by Metropolitan. Dr. Huynh's

Affidavit provides specific facts relied upon by Mr. Huard in forming his belief, as well as the assertion that Mr. Huard believes this information to be true. See, Karvelas, 360 F.3d at 226; Mass.R.Civ.P. 4.1(h).

5

Affidavit also contains false statements in direct conflict with his attestation under the pains and penalties of perjury. See, Huard Supplemental Affidavit ¶¶ 25-27; Answer of Dr. Huynh, ¶ 90; Answer of Spine Care, ¶ 90.

In conjunction with Dr. Huynh's Affidavit, the Defendants submit certain patient records to support the allegedly benign nature of Dr. Huynh's practice. See, Docket Numbers 59-2 and 59-3. Of greatest significance is that only one of these patients, Tran Nguyen, submitted a claim through Metropolitan and only as the Bodily Injury carrier. See, Docket No. 59-4, pp. 14-30; Huard Supplemental Affidavit, ¶ 8. As these records concern patients who have submitted claims with other insurance carriers, it would appear that the Defendants have admitted the allegations brought by Metropolitan with regard to Metropolitan only, and seek to cloud the issues by referring to other patients and by deliberately concealing by omission, the identity of the insurance carriers. Despite this deliberate malfeasance, even an analysis of the records pertaining to these other patients supports Metropolitan's allegations against the Defendants and further reveals the nature of the Defendants' insurance fraud scheme.

Dr. Huynh's Affidavit, as compared to the Defendants' own medical records, patient testimony, and the professional standards of both the Massachusetts Board of Chiropractors and the American Medical Association, reveals that Dr. Huynh's most recent affidavit is entirely self-serving, contains false statements and material omissions; and therefore, it should be disregarded and stricken.

## 1.    Dr. Huynh's Affidavit Fails to Counter or Deny Billing for Medical Treatments Improperly and/or Never Provided

Dr. Huynh's Affidavit uses language and cultural challenges he faces in treating a predominately Vietnamese client base, and yet fails to deny even the most basic and fundamental allegations of fraud pled in Metropolitan's Complaint. The most apparent example is that while

6

his own patients deny ever receiving chiropractic treatments, which are required to be physically administered by the hand of a licensed chiropractor or physical therapist, his Affidavit does not even attempt to deny this fact, let alone justify this improper conduct.

According to the American Medical Association ("AMA"), "massage" is a *Therapeutic Procedure*, defined as, "[a] manner of effecting change through the application of clinical skills and/or services that attempt to improve function. Physician or therapist required to have direct (one-on-one) patient contact."[4] Massage is billed with the Current Procedural Terminology ("CPT") Code 97124, which is separate and distinguishable from the CPT Codes defined under *Modalities*, some of which may be administered with supervision, even though "direct (one-on-one) patient contact" is not required.[5]

By way of example only, patients Meo Thi Tran, Muoi Thi Huynh, Anh Bui, Steven Nguyen, Linda Le, and Son Khac Vu all denied, under oath, ever receiving massage treatment physically administered by the hand of a licensed chiropractor or physical therapist.[6] Nhut Cao testified that he only received one physical massage by an unidentified person, but not Dr. Huynh.[7] Despite these assertions, the Defendants billed these patients for the following treatments:

- Meo Thi Tran:       20 massages
- Muoi Thi Huynh:   22 massages
- Anh Bui:               5 massages
- Steven Nguyen:     23 massages

---

[4] *American Medical Association Current Procedural Terminology, CPT 2005, Standard Edition*, AMA Press 2004 ("*2005 CPT Book*"), pp. v, 1-10, 309-310, hereafter attached as Exhibit "2"; *American Medical Association Current Procedural Terminology, CPT 2004, Standard Edition*, AMA Press 2003 ("*2004 CPT Book*"), pp. vii, 1-10, 294, hereafter attached as Exhibit "3"; *American Medical Association Current Procedural Terminology, CPT 2002, Standard Edition*, AMA Press 2001 ("*2002 CPT Book*"), pp. iii, 1-10, 302, hereafter attached as Exhibit "4"; *American Medical Association Current Procedural Terminology, CPT 2001, Standard Edition*, AMA Press 2000 ("*2001 CPT Book*"), pp. iii, 1-10, 298, hereafter attached as Exhibit "5."

[5] See, Exhibits 2 (p. 310), 3 (p. 294), 4 (p. 302), and 5 (p. 298).

[6] See, Mark Huard Affidavit, dated September 30, 2005 ("Huard Affidavit"), Exhibits 3 (35:6-18); 10(55:3-6), 21 (50:5-12), 27 (66:15-17), 41(66:17-19), 38(6-10).

[7] Id., at Exhibit 32(55:8-15).

- Linda Le:          7 massages
- Son Khac Vu:    5 massages
- Nhut Cao:         25 massages[8]

Notably, these patients do not require complex training in chiropractic techniques to know whether Dr. Huynh, or any other Spine Care staff member, touched a part of their own body with his hands. Rather than deny the improper and false record keeping and billing, Dr. Huynh's somehow suggests, despite the AMA's definition and correlating CPT code, that massage therapy is a supplemental modality, which can be applied without direct, one-on-one, patient contact. See, Docket Number 59-2, Exhibit A, ¶ 6. However, Dr. Huynh does not and cannot cite to any medical text, code, treatment manual or other objective documentation to support this statement.

Dr. Huynh's Affidavit is also silent regarding the glaring inconsistencies between the Defendants' billing records and the number of times patients were actually treated by *any* licensed chiropractor. For instance, Muoi Thi Huynh testified that she was only treated by Dr. Huynh during her initial and final examinations, with the rest of her treatments provided by the Spine Care staff.[9] However, the Defendants billed for eighteen (18) manipulations and twenty-two (22) massage therapies, the vast majority of which were allegedly provided on days other than Ms. Huynh's initial and final examination dates,[10] and which had to be provided by Dr. Huynh or another licensed chiropractor or physical therapist.[11]

Rather than admit to this blatantly fraudulent conduct, Dr. Huynh suggests a tenuous justification for the Defendants' fraudulent diagnosis of Ms. Huynh's injuries; which then set the course for the false billing. Ms. Huynh testified that the only injuries she suffered were to both

---

[8] See, Huard Affidavit, Exhibits 8, 13, 26, 29, 34, 42, and 46.
[9] See, Huard Affidavit, Exhibit 3 (35:8-18).
[10] Id., at Exhibit 8.
[11] See, Exhibits 2-5.

8

knees and her left arm.[12] In direct contrast, Dr. Huynh diagnosed Ms. Huynh has having extensive back and neck pain.[13] Dr. Huynh justifies this discrepancy by explaining that his "objective findings are not limited to the areas of the [patient's] complaint." See, Docket Number 59-1, Exhibit A ("Huynh Affidavit"), ¶ 3. For some unknown reason, Dr. Huynh provides the example of "sciatica" whereby a patient may suffer from leg pain which is the result of "a protruding disk in the lower spinal column." Id. Yet nowhere within Ms. Huynh's medical records does Dr. Huynh indicate that Ms. Huynh suffered from sciatica.[14] In fact, Dr. Huynh's Affidavit is similarly silent on whether knee and arm pain can somehow be related to extensive back and neck pain. This shows Dr. Huynh's total disregard for his patients' complaints and his adherence to a pattern of false diagnosis and false billing, which is consistent throughout the patients referred to in Metropolitan's Complaint. Essentially, Dr. Huynh's affidavit admits fraud.

The Defendants use Steven Nguyen as another attempt to deflect the allegations against them. Steven Nguyen testified that he was only treated by Dr. Huynh, or another chiropractor for a total of four (4) times.[15] Yet, the Defendants' billing records indicate that Mr. Nguyen received forty (40) different treatment modalities requiring direct, one-on-one, patient contact.[16] Dr. Huynh's affidavit is silent on this aspect of Mr. Nguyen's treatment but focuses on his diagnosis and other treatment rendered to Mr. Nguyen.

The conduct of false billing occurred, *regardless* of the reported injuries suffered by Mr. Nguyen and diagnosed by Dr. Huynh. Although the Defendants proclaim Steven Nguyen as

---

[12] See, Huard Affidavit, Exhibit 3 (12:8-24; 13:1; 20:14-24; 23:6-12).

[13] Id., at Exhibit 5.

[14] The proper diagnosis code for sciatica due to displacement of an intervertebral disc is 722.10. See, 2005 Professional ICD-9-CM for Physicians-Volumes 1 & 2, Ingenix, 2004, pp. 205 (Vol. 1) and 295 (Vol. 2), hereafter attached as Exhibit "6" ; See, Huard Affidavit, Exhibits 4-8.

[15] See, Huard Affidavit, Exhibit 10 (66:8 through 67:14).

[16] Id., at Exhibit 13.

representative of Dr. Huynh's upstanding activities, the Defendants cannot counter the specific allegations of fraudulent conduct with respect to the false record keeping and inflated billing for Mr. Nguyen's claims.

Assuming, *arguendo*, that Dr. Huynh is able to give one or two examples of proper conduct, which Metropolitan denies, the Defendants do not present any evidence which refutes the overall scheme as alleged by Metropolitan nor do they counter the majority of Metropolitan's allegations regarding specific fraudulent activity, which even taken independently, establish the Defendants' pattern of fraudulent conduct. As such, the Defendants have failed to provide this Court with adequate justification necessary to reconsider its prior ruling.

**2.    Dr. Huynh's Affidavit Fails to Justify the Defendants' Use of Improper Billing Codes**

The improper use of CPT codes, one of many types of the Defendants' fraudulent activities, enables the Defendants to conceal their fraudulent scheme with regard to the individual patient, as well as within the insurance industry. By applying a new patient CPT code to an existing patient, the Defendants are fraudulently misrepresenting their relationship with that patient, as well as concealing their knowledge of that patient's pertinent medical history and prior claims history. This allows the Defendants to bill for more complex examinations and more lengthy treatment programs than may be warranted.

Additionally, the improper use of new patient CPT Codes enables the Defendants to disguise their relatively small pool of patients, many of which have extensive insurance claim histories with multiple insurance carriers, with minimal risk of increased scrutiny due to the false impression of a large patient base. Thus, while the Defendants' improper use of a new patient CPT code may be not for the sole purpose of being able to charge a higher rate for that particular visit, this practice allows the Defendants to embark on a predetermined course of treatment and

10

billing. Furthermore, disguising each existing patient as a new patient allows the Defendants to deceive various insurance carriers as the records and CPT codes falsely suggest that the particular patient has never: (1) been in a prior motor vehicle accident; (2) suffered identical injuries; and, (3) been a patient of the Defendants for their prior accidents and insurance claims. In essence, the Defendants themselves through the affidavit of Dr. Huynh have revealed the true nature of their practice and have confirmed, and essentially admitted the allegations in Metropolitan's Complaint.

Through his affidavit, Dr. Huynh goes to great lengths to justify his uniform use of new patient CPT Codes, when in fact the patient being examined is properly defined as an existing patient. See, Dr. Huynh Affidavit, ¶¶ 10-12. Indeed, Dr. Huynh *admits* that he bills existing patients as new patients,[17] claiming that since the Defendants charge the same for both new and existing patient examinations, the Defendants are permitted to use the various CPT Codes interchangeably. Id., at ¶ 12. The Defendants' obvious disregard for proper coding further supports Metropolitan's contention that this practice constitutes a material component of their overall insurance fraud scheme.

CPT Codes are identifying codes, defined through descriptive terms and used "for reporting medical services and procedures performed by physicians."[18]

> The purpose of the terminology is to provide a *uniform* language that will *accurately describe* medical, surgical, and diagnostic services, and will thereby provide an effective means for reliable nationwide communication among physicians, patients, and third parties.

---

[17] Such an admission is in direct conflict with the Defendants' denial of the allegations within ¶ 90 of the Complaint. Metropolitan reserves the right to appropriately address this issue in a separate motion, as required by the Federal Rules of Civil Procedure.

[18] See, Exhibits 2 (p. v), 3 (p. vii); 4 (p. iii), and 5 (p. iii).

> The CPT book is *useful for administrative management purposes such as claims processing and for the development of guidelines for medical care review*.
>
> The CPT book is the most widely accepted nomenclature for the reporting of physician procedures and services under government and private health insurance programs. (emphasis added).[19]

Id.

The AMA clearly distinguishes "new patients" and "existing patients" with regard to

determining the proper CPT Code to be used in recording the actual evaluation and management

services provided by a medical provider:

> A new patient is one who has *not* received any professional services from the physician or another physician of the same specialty who belongs to the same group practice, *within the past three years*.
>
> An established patient is one who has received professional services from the physician or another physician of the same specialty who belongs to the same group practice, within the past three years.

It is undeniable that these widely accepted definitions are, "intended to reduce the potential for

differing interpretations and to increase consistency of reporting by physicians of differing

specialties," and they have not changed since 2001.[20]

Although Dr. Huynh nearly always assigns CPT Code 99203, the AMA provides five (5)

CPT Codes (99201-99205) under the "New Patient" category.[21]  Depending on the complexity

and comprehensiveness of the examination, a specific CPT Code is assigned.  To facilitate the

proper assignment of CPT Codes, the AMA has provided instructions for selecting the

appropriate level of service and corresponding CPT Code.[22]  Dr. Huynh's assignment of the

---

[19] Id.
[20] Id.
[21] See, Exhibit 2, p. 9.
[22] See, Exhibits 2, (p. 1), 3 (p. 1), 4 (p. 1), and 5 (p. 1).

12

same code ignores the primary purpose of assigning a CPT Code, which is to represent to other physicians, the patient, and third parties (i.e., Metropolitan), that a certain level of service was required *and* performed on a *new patient*.[23] While Metropolitan reserves the right to challenge Dr. Huynh's assertions regarding the insurance industry's standard reimbursement practice based on "units" and "geographic area," these matters are inconsequential unless the Defendants can establish that they, in fact, fulfilled the requirements associated with the specific new patient CPT Code they assigned. It is undeniable from the evidence submitted, that the Defendants have failed in this regard.

### A.   Long V. Vo

The fraudulent and deceitful nature of the Defendants' improper billing can be easily demonstrated by a close analysis of their patient, Long Vo, whose partial and incomplete medical records were attached to Dr. Huynh's Affidavit. See, Docket Number 59-3, pp. 18-26. The Defendants submitted Mr. Vo's records pertaining to a motor vehicle accident that occurred on September 10, 2002, as an example of how the Defendants administer treatment to patients for which the billing was below the $2,000.00 statutory tort threshold prescribed by M.G.L. c. 231, §6D. See, Dr. Huynh Affidavit, ¶ 13.[24]  Mr. Vo was initially examined by Dr. Huynh on October 4, 2002, and billed the new patient CPT Code 99203, which would require an extensive and comprehensive examination. See, Docket Number 59-3, p. 25.  Yet, the records submitted by the Defendants fail to reference Mr. Vo's treatment at *another* clinic for the same motor vehicle accident or the fact that Dr. Huynh had treated Mr. Vo for multiple motor vehicle accidents prior

---

[23] See, Exhibits 2, (p. v), 3 (p. vii), 4 (p. iii), and 5 (p. iii).

[24] Dr. Huynh also refers to patient, Anh Bui, to support this position. While Mr. Bui was only billed $1,095.00, the Defendants' own records clearly indicate that Mr. Bui did not complete Dr. Huynh's prescribed course of treatment, as Mr. Bui still experienced significant pain and was never formally discharged. Dr. Huynh fails to explain why Mr. Bui abandoned the prescribed course of treatment. See, Huard Affidavit, Exhibit 31.

13

to this accident. See, Docket Number 59-3, pp. 18-26; Huard Supplemental Affidavit, ¶¶ 12, 15-16.

According to several insurance industry databases, Mr. Vo initially sought treatment for the September 10, 2002 accident at Parkway Physical Therapy ("Parkway PT"). Id., at ¶ 12. Mr. Vo's initial examination with Parkway PT was on September 17, 2002, one week after the accident, and approximately one month prior to Mr. Vo's initial examination with the Defendants. Id. As a result of his treatment with Parkway PT, Mr. Vo incurred $1,691.00 in medical expenses. Id. Mr. Vo then incurred $1,520.00 in medical expenses while treating with the Defendants, thereby incurring a total of $3,214.00 in medical expenses, well beyond the $2,000.00 statutory tort threshold. Id. As a result of Mr. Vo's alleged medical expenses, including those of the Defendants, Mr. Vo received $4,684.00 in settlement of his Bodily Injury claim. Id., at ¶ 14. It is inconceivable that the Defendants were unaware of the fact of Mr. Vo's prior and possibly concurrent treatment with Parkway PT or that Mr. Vo had been their own patient for several prior accidents.

This example, proffered by the Defendants themselves, acts as further proof of Metropolitan's case. Had Metropolitan relied solely on the Defendants' medical records and the standard definitions of the CPT Codes assigned by the Defendants, it, as well as any other insurance carrier would be wrongfully misled into believing that: (1) Mr. Vo was a new patient of the Defendants; (2) Mr. Vo received no other medical treatment for his alleged injuries other than that administered by the Defendants; and, (3) Mr. Vo had not suffered similar injuries within the last three years. Indeed, this example shows the Defendants' well calculated scheme to prevent an insurance carrier from detecting their well implemented pattern of billing fraud.

14

Below is a list of Mr. Vo's **four** motor vehicle accidents, all of which occurred within a

twenty-two (22) month period; and it should be noted that despite Dr. Huynh's assertions

contained in his Affidavit, he fails to admit that Mr. Vo treated at Spine Care for three of the four

accidents, submitting claims to four different insurance carriers:

| DATE OF LOSS | INSURANCE CARRIER AND CLAIM NUMBER | TREATING CLINICS | CLINIC BILLS | ATTORNEY |
|---|---|---|---|---|
| 6/12/2001 | HORACE MANN 075000000003534 | **SPINE CARE** | **\$4,075.00** | HARRINGTON |
| 12/5/2001 | ARBELLA 00020318805 | **SPINE CARE** | **\$4,045.00** | HARRINGTON |
| 9/10/2002 | COMMERCE PA4255003 | PARKWAY PT **SPINE CARE** | \$1,691.00 **\$1,520.00** | REEF |
| 4/7/2003 | LIBERTY MUTUAL 0F001455284 | ALLIANCE PT | \$3,917.00 | DALEY |

See, Huard Supplemental Affidavit, ¶¶ 15-16.

Remarkably, the Defendants' medical records pertaining to Mr. Vo's September 10, 2002

accident make no mention of his previous accidents and treatment at Spine Care, all of which

occurred within the previous fifteen (15) months. Indeed, the Defendants billed **\$9,640.00** for

treatments provided to Mr. Vo, relating to the three separate motor vehicle accidents. Based on

the Defendants' own medical records and misrepresentations through improper CPT Codes, the

Defendants were successful in deceiving various carriers that the Defendants had no prior

relationship with Mr. Vo. Id.; See, Docket Number 59-3, p. 25.

Therefore, based on a review of the Defendants' own supporting documents, it is clear

that the Defendants cannot proffer *any* medically reasonable justification for applying a new

15

patient CPT Code to its existing patients, other than to purposely misrepresent their relationship with a particular patient, thereby further concealing their scheme to defraud Metropolitan and other insurance carriers.

### 3. Defendants' Challenges to Patient Testimony are Unfounded and Should be Disregarded

As a last and desperate measure, the Defendants now attempt to challenge the reliability of their own patients' testimony. First, Dr. Huynh proffers his own layman opinion that professional Vietnamese interpreters are incapable of effectively and accurately translating English to Vietnamese, so that the patients can provide proper answers. See, Dr. Huynh Affidavit, ¶8. This lay opinion is inadmissible, irrelevant, and not proper and should be stricken from his affidavit. The Defendants next argue that the examination under oath testimony is unreliable, as defense counsel did not attend and there is no opportunity for objections or cross-examination. See, Docket Number 59-1, p. 11. Finally, the Defendants attempt to argue that Vietnamese patients are reluctant to provide personal and confidential information, and therefore, testimony obtained during an examination under oath is of skeptical value. See, Dr. Huynh Affidavit, ¶ 8.

Dr. Huynh's layman assertion that the professional interpreters employed by Metropolitan during its examinations under oath are ill-equipped to properly translate basic and fundamental chiropractic terms is completely unfounded. The interpreters used by Metropolitan are employed by reputable interpretive services and are certified within the Commonwealth of Massachusetts to serve as interpreters. See, Huard Supplemental Affidavit, ¶¶ 19-22. Furthermore, to the extent possible, the questions asked by Metropolitan were structured using basic words and concepts. Id., at ¶ 23. Indeed, most of the patients were shown photographs of

16

the equipment from Spine Care, that they then had an opportunity to admit or deny said equipment utilization. Id., at ¶ 22.

While the Defendants place emphasis on the difficulty of translating "manipulation," and the manner in which Metropolitan describes "infrared treatment," it is clear that each patient understood whether or not anyone from Spine Care, including Dr. Huynh, physically touched his or her body during the implementation of treatment, as well as the number of times Dr. Huynh personally provided treatment. Many patients also denied receiving infrared treatment after being shown a photograph of the infrared equipment. See, Huard Supplemental Affidavit, ¶¶ 22, 27.

The Defendants' argument that patient under oath testimony is unreliable because defense counsel was not present to cross-examine is also meritless. An examination under oath is a contractual right properly used by insurance carriers to ensure claimants cooperate during an investigation, as is their contractual obligation. Lorenzo-Martinez v. Safety Ins. Co., 58 Mass.App.Ct. 359, 364 (2003)(The provision [requiring a claimant to submit to an examination under oath] ostensibly exists to weed out fraud by providing an insurer with a mechanism for obtaining formal corroboration of a claim). These patients had the right to have counsel present, which most exercised, as well as the use of an interpreter, should they so require or request. Furthermore, each patient was provided the opportunity to review his or her testimony, to ensure their testimony was accurately transcribed.[25] To date, not one single patient nor one single attorney has ever challenged the accuracy of their transcript, or of their testimony due to a language barrier, or any other reason as claimed by the Defendants. See, Huard Supplemental Affidavit, ¶ 23.

_____

[25] See, Huard Affidavit, Exhibit 3, p. 48.

17

Perhaps the strongest evidence that the patient testimony proffered by Metropolitan is reliable is that these statements were made under oath and against the declarant's own interest. Due to the inherent truthfulness of such statements, they are regarded as material enough to warrant an exception from Rule 802 of the Federal Rules of Evidence, which prohibits the admission of hearsay. F.R.E. 804(B)(3).

With regard to the examination under oath transcripts attached to Mr. Huard's Affidavit, each patient made statements that were directly contrary to their own pecuniary interests in seeking Personal Injury Protection ("PIP") benefits under the Massachusetts "No-Fault" statute. M.G.L. c. 90, §34M. Rather than falsely corroborate the Defendants' fraudulent medical records, which would have entitled them to PIP benefits *and* Bodily Injury claims, the patients truthfully testified as to what modalities of treatment they actually received from the Defendants. As such, and for these additional reasons, these statements are reliable.

To the extent the Defendants disagree with their own patients' testimony, they will have the opportunity to counter that testimony, which is unfavorable to Dr. Huynh, during the patients' future depositions. Until that time, this Honorable Court should not presume patient under oath testimony is unreliable, especially where the assertions, are based upon unsubstantiated lay opinions within Dr. Huynh's self-serving affidavit.

## 4.     The Defendants Failed to Justify Their Improper Relationships With Attorneys

Dr. Huynh's dubious characterization of his relationship with local attorneys also warrants no consideration. For instance, the Defendants attached a list of local attorneys, which is apparently (and improperly) provided by the Defendants to patients requesting assistance in retaining counsel. See, Docket Number 59-5, p. 2. It is unclear whether the list provided to this Court was generated for the purpose of the Defendants' Motion, or whether it is a copy of the

18

actual list the Defendants provided to their patients. Regardless, Dr. Huynh's Affidavit does not even attempt to explain how his clinic is "familiar" with these particular attorneys, or how he determined which attorneys were to be included on the list. See, Dr. Huynh Affidvait, ¶ 14.

Interestingly, Dr. Huynh chose to omit certain attorneys from the list, which would further reveal and confirm Metropolitan's allegations. By way of example, Attorney Daley has been associated with a significant number of Spine Care claims, and even more claims with Spine Care's sister corporation, Chirotherapy & Rehab, Inc. ("Chirotherapy"), and yet he does not appear on the list. See, Huard Supplemental Affidavit, ¶ 31. Notably, Attorney Daley currently employs Ms. Doa Ha, a former employee of Dr. Huynh. Id.[26]

Based on Dr. Huynh's Affidavit, See Dr. Huynh Affidavit, ¶ 15, it appears as if the patients are given the name of an attorney before treatment has even started, but in all cases, before treatment was complete. It is highly suspect that Dr. Huynh would know before his examination of the patient and the completion of the treatment that a particular patient would require legal representation in connection with a claim for Bodily Injury benefits.

Dr. Huynh's Affidavit casts even more suspicion on his practice. For instance, Dr. Huynh asserts that his staff often helps patients communicate with "people who do not speak Vietnamese," which includes contacting local attorneys, and even translating everything from "letters from [the patient's] insurance company to telephone bills." Id., at ¶ 16. Despite assisting patients with their telephone bills, at least one patient, Meo Thi Tran, testified that the Spine Care staff had her sign an Assignment of Proceeds, Lien and Authorization, thereby transferring her legal rights to Spine Care, without the benefit of Spine Care's translation services.[27]

---

[26] It goes beyond coincidence that Attorney Ronald Pinson, who is associated with nearly 25% of Spine Care-related Metropolitan claims, previously employed Courtney Walton, who is currently employed as the "Billing Coordinator" for Spine Care and Dr. Huynh. See, Huard Supplemental Affidavit, ¶¶ 28, 30.

[27] See, Huard Affidavit, Exhibit 21, p. 44:16-21; Exhibit 24.

Moreover, based on claimed difficulties of an alleged Vietnamese/English language barrier and
Spine Care's staff acting as translators for the patient's counsel, the Defendants place attorneys
on "the list" who already employ Vietnamese speaking staff. See, Huard Supplemental
Affidavit, ¶ 33. Furthermore, and of great significance, the Defendants do not deny that patients
have met with Attorneys while at Spine Care facilities, a direct violation of M.G.L. c. 221, §44A.

Dr. Huynh's Affidavit fails to justify any relationship between the Defendants and local
attorneys, or the Defendants' involvement in facilitating new relationships between its patients
and local attorneys. In fact, Dr. Huynh acknowledges that he passes out attorney business cards
at his clinic, thereby facilitating a particular attorney's solicitation of new personal injury clients,
which may be an admission of violating M.G.L. c. 221, §44A. As such, the Defendants have
provided the Court with no reasonable justification that warrants a reconsideration of the Court's
Order. Therefore, the Defendants' Motion for Reconsideration should be denied.

## IV.    CONCLUSION

Based on the foregoing analysis, the Defendants have failed to sufficiently counter any of
the evidence submitted by Metropolitan and relied on by this Honorable Court in finding that
Metropolitan was likely to succeed on the merits against the Defendants, and recover an amount
in excess of $800,000.00. As such, the Defendants have provided the Court with no reasonable
justification to reconsider its standing Order.

Therefore, the Plaintiff, Metropolitan Property and Casualty Insurance Company,
respectfully requests that this Honorable Court deny the Defendants' Motion for Reconsideration
of the Court's October 12, 2005 Order Denying the Defendants' Motion to Dissolve
Attachments, and any other relief deemed fair and just.

20

Respectfully submitted,
By the Plaintiff,
Metropolitan Property and Casualty
Insurance Company,
By its attorneys,

Glenda H. Ganem, Esq.
BBO# 564374
Clayton R. Henderson, Esq.
BBO# 659532
McGovern & Ganem, P.C.
21 Merchants Row, 4th Floor
Boston, MA 02451
Date: /0/28/05                        (617) 723-1444

## CERTIFICATE OF SERVICE

I, Glenda H. Ganem, attorney for the Plaintiff, Metropolitan Property and Casualty
Insurance Company, hereby certify that I have this day delivered, via facsimile and first class
mail, postage prepaid, a copy of the within document direct to:

Andrew Nebenzahl, Esq.                James C. Rehnquist, Esq.
Nebenzahl DuBosque, LLP               Sheryl Koval, Esq.
One Post Office Square                Goodwin Procter
Sharon, MA 01950                      Exchange Place
                                      Boston, MA 02109

**Signed under the pains and penalties of perjury this  28th  day of October, 2005.**

Glenda H. Ganem, Esq.